658 P.2d 978

Arlon BASTIAN and Una Bastian, husband and wife, Plaintiffs-Respondents,

v.

The CITY OF TWIN FALLS, a municipal corporation, Defendant-Appellant.

No. 13658.

Court of Appeals of Idaho.

Jan. 26, 1983.

Petition for Review Denied March 29, 1983.

Susan E. Swanberg, Charles P. Brumbach, Twin Falls, for defendant-appellant.

Lloyd J. Webb, Webb, Burton, Carlson, Pederson & Paine, Twin Falls, for plaintiffs-respondents.

BURNETT, Judge.

When land is lawfully used or improved in a way that conflicts with requirements of a subsequently enacted zoning ordinance, the property is said to be nonconforming. From this status flows a limited protection against zoning requirements. Today we examine the limits of such protection.

This appeal focuses upon two questions. (1) If a structure on nonconforming property is enlarged, may a city impose the same landscaping and off-street parking requirements that would apply to enlargement of a structure on conforming property? (2) Does the enclosure of an area beneath the overhanging roof of a building represent such an enlargement? In an action for declaratory judgment, the district court answered both questions negatively. The judge decided, and declared, that the City of Twin Falls had no authority to impose its landscaping and off-street parking requirements upon certain property owned by Arlon and Una Bastian. We reverse.

The subject property has been the site of a grocery supermarket for more than thirty years. During this time it has been buffeted by the forces of change and ill fortune. It has suffered a fire, the loss of a major tenant, and a partial taking by the State of Idaho in eminent domain proceedings.[1] Although the property is located in a commercial zone, it has acquired nonconforming status because it does not fully comply with setback and parking provisions of zoning laws enacted after the supermarket originally was built.

---

1. The tenancy problem was addressed by our recent decision in *Bastian v. Albertson's, Inc.*, 102 Idaho 909, 643 P.2d 1079 (Ct.App.1982). The condemnation proceedings were addressed by the Idaho Supreme Court in *State ex rel. Moore v. Bastian*, 98 Idaho 888, 575 P.2d 486 (1978) and *State ex rel. Moore v. Bastian*, 97 Idaho 444, 546 P.2d 399 (1976).

In 1979 the property lacked a long-term tenant. To make the building more attractive to potential lessees, the Bastians proposed to increase the interior square footage by extending the walls beneath an overhanging roof. What previously had been an exterior pedestrian walkway would be enclosed, expanding the floor area by more than 1200 square feet. However, when the Bastians applied for a building permit, the city initially declined to issue one. For reasons outside the scope of this appeal, the city did not challenge the Bastians' asserted right to alter a building on nonconforming property. Rather, the city contended that the proposed alteration triggered certain landscaping and off-street parking requirements under the municipal code; and that no permit could be obtained until the Bastians submitted, and secured approval of, plans complying with these requirements. The Bastians did not choose to comply. They sued and prevailed by summary judgment.

Our task, in an appeal from summary judgment, is to determine whether there are genuine issues of material fact, and whether the prevailing party was entitled to judgment as a matter of law. I.R.C.P. 56(c). The city has raised no factual issues on appeal. Consequently, it remains for us to determine whether the district court correctly decided the case as a matter of law.

I

■ We turn first to the question of whether nonconforming status insulates the Bastians' property from application of the landscaping and off-street parking requirements. The right to continue a nonconforming use or improvement of property derives from the due process clauses of the state and federal constitutions. *O'Connor v. City of Moscow,* 69 Idaho 37, 202 P.2d 401, 9 A.L.R.2d 1031 (1949). This right (often termed a "grandfather right" in lay parlance) simply protects the owner from abrupt termination of what had been a lawful condition or activity on the property. The protection does not extend beyond this purpose. 8A E. McQuillin, The Law of Mu-

nicipal Corporations (3d ed.1976), § 25.182, at 14.

Thus, nonconforming status is not a talisman from which all zoning controls must retreat. Rather, the public policy embodied in zoning laws "dictates the firm regulation of nonconforming uses with a view to their eventual elimination." 1 R. Anderson, American Law of Zoning (Second) (1976), § 6.07, at 371; *see Cole-Collister Fire Protection Dist. v. City of Boise,* 93 Idaho 558, 561 n. 3, 468 P.2d 290, 293 n. 3 (1970).

■ From that policy flows the corollary that nonconforming uses have no inherent right to be extended or enlarged. *See, e.g., San Diego County v. McClurken,* 37 Cal.2d 683, 234 P.2d 972 (1951). This corollary is recognized in nearly all states—the principal exception being Pennsylvania, which adheres to a doctrine of "natural expansion" of nonconforming uses. *See* 4 N. Williams, American Planning Law: Land Use and the Police Power (1975), § 113.08, 473–76. Although the Idaho Supreme Court has not ruled directly on the point, it has held that accessory structures may not be placed upon nonconforming property unless authorized by ordinance. *County of Ada v. Schemm,* 96 Idaho 396, 529 P.2d 1268 (1974). The *Schemm* decision implicitly adopts the corollary against extension or enlargement of nonconforming uses, except as provided by ordinance. We explicitly adopt that corollary today.

■ It follows that nonconforming property enjoys no special immunity from reasonable regulations generally governing the enlargement of buildings. *See* R. Anderson, *supra,* § 6.50, at 472. The Twin Falls City Code imposes certain landscaping and off-street parking requirements when a commercial building is enlarged. It has not been argued on appeal that these requirements are unreasonable. Nor could it be contended that they infringe upon the Bastians' right to continue their nonconforming use, as it existed when the nonconforming status was created. We conclude that the Bastians' property is not insulated, by its nonconforming status, from application of the landscaping and off-street parking re-

quirements. *Cf. Everson v. Zoning Board of Adjustment of Allentown,* 395 Pa. 168, 149 A.2d 63 (1959) (holding that, even under the Pennsylvania "natural expansion" doctrine, enlargement of a nonconforming factory may be conditioned upon landscaping and parking requirements).

## II

Next we consider whether increasing the interior floor space of the Bastians' building constitutes an enlargement governed by the municipal code. References to enlargement appear at three critical junctures of the Twin Falls City Code. Section 10–13–1 requires a building permit whenever a person undertakes to "erect, construct, *enlarge,* alter, repair, move, improve, remove, convert or demolish any building or structure in the City." (Emphasis supplied.) The Bastians concede that their project requires a permit.

Issuance of a permit under § 10–13–1 is conditioned upon compliance with two other parts of the code, which subject the enlargement of a building to off-street parking and landscaping requirements:

> [§ 10–10–1] *Off-street parking* and loading spaces conforming to the provisions of this Title shall be provided . . . when a building or structure, [is] erected or *enlarged,* when the capacity of a building or structure is increased or when the use of a building or structure is changed. [Emphasis supplied.]

> [§§ 10–11–1 et seq.] The improvements required herein shall be provided whenever a building or structure is constructed, placed, erected or *enlarged* or when the use of a building, structure or land is changed. . . . *Landscaping* shall be required [according to a table indicating that ten percent of the total land area must be landscaped]. . . . *Parking* areas . . . shall be marked off [with painted stripes]. . . . No building shall be constructed or erected . . . unless adequate access to . . . a public traffic way is provided. [Emphasis supplied.]

 Ordinances are interpreted according to the same rules of construction that apply to statutes. *E.g., Lewiston Pistol*

*Club, Inc. v. Board of County Commissioners of Nez Perce County,* 96 Idaho 137, 525 P.2d 332 (1974). The threshold consideration is whether the ordinance or statute is free from ambiguity and clearly expresses the legislative intent. If so, its terms will be given their plain and ordinary meaning; there is no need for judicial interpretation. *Swensen v. Buildings, Inc.,* 93 Idaho 466, 463 P.2d 932 (1970); *Knight v. Employment Security Agency,* 88 Idaho 262, 398 P.2d 643 (1965).

In this case, the terms "enlarge" or "enlargement" are not defined by portions of the municipal code included in the record on appeal. In the passages quoted above, references to enlargement are connected by the word "or" with various references to construction, alteration, increase of capacity, and the like. The word "or" normally has a disjunctive meaning. It indicates an alternative, corresponding to "either." *Filer Mutual Telephone Co. v. Idaho State Tax Comm.,* 76 Idaho 256, 281 P.2d 478 (1955). When used to denote an alternative, the word "or" may give cumulative meaning to the terms it connects, or it may signify that each term has a separate, exclusive meaning. Thus, the precise question before us is whether enlargement, as it appears in the code, may include an alteration and increase of capacity, or whether it carries a different, narrower meaning. To determine which usage is appropriate, the municipal code must be judicially construed.

 As we recently had occasion to observe, there are many starting points and conflicting directions in statutory construction; but the primary goal should be to ascertain the legislative intent. *Knudson v. Boundary County School Dist.,* 104 Idaho 93, 656 P.2d 753 (Ct.App. 1982). Such intent may be discerned "from the occasion and necessity of the law, from the mischief felt, and the remedy in view." *Noble v. Glenns Ferry Bank, Ltd.,* 91 Idaho 364, 367, 421 P.2d 444, 447 (1966), *quoting from Offield v. Davis,* 40 S.E. 910, 912 (Va. 1902). The particular words of a statute should be read in context; and the statute as a whole should be construed, if possible,

to give meaning to all its parts in light of the legislative intent. *E.g., Maguire v. Yanke,* 99 Idaho 829, 590 P.2d 85 (1978); *Messenger v. Burns,* 86 Idaho 26, 382 P.2d 913 (1963).

The municipal code sections we have cited follow a general statement of purpose by the Twin Falls City Council. At § 10–1–1, the council adverts to the objectives of "adequate and efficient transportation," the "avoidance of congestion," and preserving "the natural beauty and topography of the municipality." Reading these recitals together with the substantive code sections, we deem it clear that the council perceived an "occasion and necessity" for improving the management of vehicular traffic, and enhancing the appearance of the business district, in the city. The "mischief felt," in regard to the code provisions at issue in this case, appears to have been the reduction of open space, and the attraction of greater vehicular traffic, caused by new commercial buildings or expansion of existing structures. The "remedy in view" evidently was to require certain landscaping and off-street parking improvements, as conditions to the issuance of building permits.

In light of this legislative purpose, we believe the word "or" was used by the city council in an inclusive sense. The legislative intent was to cover all construction that diminished open space and attracted greater traffic in commercial areas. Consequently, we do not interpret the term "enlarge" to be narrowed by the accompanying references to alteration or increase of capacity.

Moreover, as an extrinsic aid to construction, we note that enlargement has been interpreted to mean an increase in bulk or capacity. *See* Black's Law Dictionary 475 (rev. 5th ed.1979); 30 C.J.S. *Enlargement* (1965).[2] This interpretation is consistent with the legislative purpose we have ascribed to the municipal code.

Accordingly, we interpret "enlarge" or "enlargement" to embrace a project to extend the interior dimensions of a supermarket beyond the existing walls, by erecting new walls around an exterior walkway. Such a project encloses open space, albeit formerly beneath an overhanging roof. It increases the interior area available for store operations. We hold that the Bastians' project represents an enlargement within the meaning of code §§ 10–10–1 and 10–11–1 et seq., as well as an increase in the capacity of the building, as denoted by § 10–11–1.

We conclude that these sections of the municipal code are applicable to the Bastians' property. The judgment of the district court is reversed. Because the parties have raised, in this declaratory action, no issues beyond the applicability of the landscaping and off-street parking requirements, no remand for further proceedings is required.

Costs on appeal to the appellant, City of Twin Falls. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.

2. The parties have invited our attention to numerous cases in which the courts have diversely decided whether particular projects represented "enlargements" of nonconforming uses. *See, e.g., Lewis-Clark Memorial Gardens v. City of Lewiston,* 99 Idaho 680, 587 P.2d 821 (1978). However, those cases focus upon the question of whether the projects should be prohibited. Here, the City of Twin Falls does not suggest that its code prohibits the Bastians' project; rather, the question is whether the project comes within code sections which impose certain requirements without regard to nonconforming status. We do not view the cases decided in the framework of prohibition to be appropriate extrinsic aids to construction of the nonprohibitory code sections before us.