675 P.2d 344

**GLENGARY–GAMLIN PROTECTIVE
ASSOCIATION, INC., et al.,
Respondents,**

v.

**Forrest M. BIRD and Mary F. Bird,
Applicants-Appellants,**

v.

**BONNER COUNTY BOARD OF COM-
MISSIONERS, Respondents.**

No. 13786.

Court of Appeals of Idaho.

Dec. 28, 1983.

Petition on Costs Denied Feb. 9, 1984.

Steven L. Herndon and Terrence Emory Harrison, Sandpoint, for applicants-appellants.

Scott W. Reed, Coeur d'Alene, for respondents Glengary-Gamlin Protective Ass'n, Inc. et al.

Gary H. Finney, Sandpoint, for respondents Bonner County Bd. of Com'rs.

BURNETT, Judge.

This case presents two issues. First, under what circumstances may an organization have standing as an "affected person" to seek judicial review of a local land use decision? Second, for what purposes may local authorities, when considering an application for a special or conditional use permit, determine the extent of the applicant's entitlement to conduct the activity in question as a prior nonconforming use?

These issues are framed by a conditional use application submitted by Forrest and Mary Bird to the Bonner County Board of Commissioners. The Birds sought a permit for "rotary and fixed wing aircraft services" at a site near Lake Pend Oreille and Gamlin Lake. The application was resisted by individuals who collectively formed an organization entitled the Glengary-Gamlin Protective Association, Inc. A county planning commission recommended that the application be denied. The Board of Commissioners ultimately granted the application in part, as to some of the proposed aircraft services, but denied it as to other services. The Birds and the Association both sued in district court for judicial review of the Board's determination. These cases were consolidated for a single decision. Upon grounds not germane to the instant appeal, the district court reversed the Board's determination and remanded the application for further consideration. The Birds appealed, and the Association cross-appealed, the district court's decision. However, the Association later stipulated to dismissal of its cross-appeal, leaving only the Bird's appeal to be decided.

The Birds have not challenged the reasons for the district court's reversal of the Board's action on their application. Rather, they have attacked the district court's rulings on two ancillary points. First, they argue that the court erred by refusing to dismiss, for lack of standing, the Association's complaint for judicial review. Second, they contend that the court erred by directing the Board upon remand to determine whether some of the proposed activities specified in the conditional use application already have "grandfather rights" as prior nonconforming uses. We affirm the district court's decision, with a modification explained below.

I

We first consider the question of organizational standing. Idaho Code § 67–6521, part of the Local Planning Act, provides that an "affected person" is entitled to be heard when an application for a permit is submitted to local land use authorities. An "affected person" is defined as "one having an interest in real property which may be adversely affected by the issuance or denial" of the permit. The statute further provides that after the land use authorities have made a final decision upon the application, an "affected person aggrieved" by the decision may "seek judicial review under the procedures provided by sections 67–5215(b) through (g) and 67–5216, Idaho Code." These latter sections comprise part of the Idaho Administrative Procedure Act, and they describe the process by which judicial review of administrative action is conducted.

■ In the present case, the Birds contend that the Association had no standing, as an "affected person aggrieved" by the Board's action, to seek judicial review of that action. As mentioned above, the Birds moved to dismiss the Association's complaint for review.[1] The district court, in an order issued by the Honorable Dar Cogswell, denied the motion.

■ The question of the Association's standing does not directly affect the outcome of the instant appeal. As noted, the Association has dropped its cross-appeal from the district court's decision. However, because the Birds' application has been remanded for further consideration, another round of judicial review could ensue. The district court's ruling on the question of organizational standing would govern the Association's right to participate in any such further review proceedings. Consequently, we deem the standing

question to be properly raised in this appeal.

The question invokes a two-tiered analysis. On a general level, we examine the court-made rules governing an organization's right to assert the interests of its members. On a more particular level, we focus upon the Association's standing under I.C. § 67–6521.

Our research has not disclosed a previously reported Idaho decision enumerating the elements of organizational standing. However, this task has been undertaken repeatedly during the past decade by the United States Supreme Court. Although some elements of standing in the federal system are colored by the peculiar requirements of a "case" or "controversy" under the federal constitution, nevertheless, the Supreme Court's analyses of organizational standing are instructive here.

In *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972), the Supreme Court said, "It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review." In *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court again stated that, even in the absence of injury to itself, an association may have standing solely as the representative of its members. The Court noted that "to justify any relief the association must show that it has suffered harm, or that one or more of its members are injured." *Id.* at 515, 95 S.Ct. at 2213. The Supreme Court summarized the rules of organizational standing in *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977):

[W]e have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to

---

1. The Association, and several individuals purporting to be among its members, also intervened in the Birds' separate suit for review of the Board's decision. This intervention encountered no objection at the time, although the Birds now question whether the intervention

should have been allowed. Because that issue was not timely raised before the district court, we decline to consider it here. *See e.g., W.F. Constr. Co. v. Kalik,* 103 Idaho 713, 652 P.2d 661 (Ct.App.1982); *Gemkist Farms, Inc. v. Bolen,* 102 Idaho 906, 643 P.2d 1076 (Ct.App.1982).

protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

In determining whether these tests have been satisfied, a court should examine the pleadings and any supplementary materials filed by the organization.

For purposes of ruling on a motion to dismiss [a complaint] for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. [Citation omitted.] At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

*Warth v. Seldin, supra,* 422 U.S. at 501–02, 95 S.Ct. at 2206–07.

In this case, the Association's complaint for judicial review, filed in the district court, alleged the following:

Glengary-Gamlin Protective Association, Inc., is a cooperative association of land owners and [sic] in the general area of Glengary Bay on Lake Pend Oreille and Gamlin Lake in Bonner County. The association was incorporated in September, 1978, for the purpose of protecting the interests of all persons who own property in the general vicinity of Glengary Bay and Gamlin Lake to insure that any development of property in the area is carried on in an orderly manner in compliance with all applicable county, state and federal laws and health and safety regulations for the protection of property owners and the general public in the unique contiguous area.

An affidavit submitted to the district court by the president of the Association further stated:

I own real property located adjacent and contiguous to the property of Forrest M. Bird which was the subject of the application for a special use permit....

I am the general agent and president of the Glengary-Gamlin Protective Association, Inc. This non-profit property owners [sic] association was created in September, 1978, principally out of concern to protect the property interests of the Glengary Gamlin property owners from what we feared might be the consequences of the granting of the special use permit....

At the present time there are more than 100 members of the Association who are property owners and taxpayers in the immediate vicinity of the Bird ownership.

These allegations concerning the Association's purpose and membership were not contested in the district court. Rather, the applicants simply argued then, as they continue to argue now, that the allegations were insufficient to establish organizational standing as a matter of law. We disagree.

The particular activities for which the Birds sought a permit were listed in their application as follows:

1) Recreational sight-seeing and transport, instruction, maintenance and charters; 2) Aerial spraying, fertilization and seeding, including weather modification; 3) Aerial lumbering and crane service; 4) Aerial medical transport; 5) Government contract services; 6) General research and development.

The district judge held, and we deem it clear, that landowners in the Glengary Bay vicinity would be "affected" within the meaning of I.C. § 67-6521 by the activities outlined in the Birds' application. The record discloses that the area had been zoned "recreational open space." The enjoyment and value of properties in the area could be impacted by airplane and helicopter traffic to and from a nearby commercial air transport base. Thus, the Association's allegations are sufficient to satisfy the first *Hunt* test, that the organization's members have standing to sue in their own

right. The second test—that the interests which the organization seeks to protect be germane to the organization's purpose—also is clearly satisfied. The Association has alleged not only that it was formed to resist perceived encroachments upon the interests of property owners but also that the Birds' application prompted the formation of the organization.

Finally, we consider the third *Hunt* test—that neither the claim asserted, nor the relief requested, require the participation of the individual members. This test is derived from *Warth v. Seldin, supra,* where the Supreme Court noted that an organization cannot seek damages for alleged injury to its members if "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." 422 U.S. at 515–16, 95 S.Ct. at 2213–14. Here, the Association has not sought damages for injury to individual members. Although a damage claim initially was included in a separate count of the Association's complaint for judicial review, that claim later was dropped by the Association. The Association's complaint, as so amended, sought only judicial review of the Board's action and injunctive relief against continuation of those activities which already had been commenced by the Birds. The district court did not rule upon any relief sought by the Association, beyond review of the Board's action. The propriety of the Board's action was an issue that did not require particularized proof of injuries claimed by individual members of the Association. Accordingly, we hold that the third *Hunt* test has been satisfied.

We conclude that the Association had organizational standing to pursue its complaint for judicial review in the district court. The court did not err by refusing to dismiss the Association's complaint.

## II

We next turn to the decision ultimately made by the district court on the Board's action. This decision was set forth in a written opinion by the Honorable Watt E. Prather. Judge Prather reversed the Board's determination that the Birds' application should be granted in part and denied in part. He remanded the application for further consideration. In connection with the remand, Judge Prather's opinion included the following directive:

Bird has contended that some of the uses he sought were already available to him under "grandfather" rights. The record does not show that either Planning or the Board considered the question of "grandfather" rights—meaning the right to continue a nonconforming use which existed prior to enactment of the zoning ordinance. On remand, these questions should be determined.

This directive apparently was made in light of a controversy as to whether some of the facilities to support the proposed air transport base had been constructed, or were in the process of being constructed, when Bonner County enacted the zoning ordinance establishing the "recreational open space" zone.

We are now asked to decide whether local authorities, when considering an application for a special or conditional use permit, should concern themselves with whether the applicant might be entitled to engage in some of the proposed activities as prior nonconforming uses. In *Bastian v. City of Twin Falls,* 104 Idaho 307, 308, 658 P.2d 978, 979 (Ct.App.1983), we noted that "[w]hen land is lawfully used or improved in a way that conflicts with requirements of a subsequently enacted zoning ordinance, the property is said to be nonconforming. From this status flows a limited protection against zoning requirements." The owner of a lawful nonconforming use has a right to continue that use despite the conflicting provisions of the subsequently enacted zoning ordinance. As we further said in *Bastian:*

The right to continue a nonconforming use or improvement of property derives from the due process clauses of the state and federal constitutions. [Citations omitted.] This right (often termed a

"grandfather right" in lay parlance) simply protects the owner from abrupt termination of what had been a lawful condition or activity on the property. The protection does not extend beyond this purpose. [104 Idaho at 309, 658 P.2d at 980.]

■ Because the limited right to continue a nonconforming use is constitutionally protected, it is axiomatic that this right cannot be destroyed by regulatory action under the subsequently enacted zoning ordinance. The Idaho Supreme Court has developed a corollary to this axiom, holding that if a proposed activity comes within the scope of protection afforded a nonconforming use, it will not lose that protection merely because it is the subject of an application for a variance or permit submitted by an owner who mistakenly has assumed that his activity is not protected. *See Lewis-Clark Memorial Gardens, Inc. v. City of Lewiston*, 99 Idaho 680, 587 P.2d 821 (1978); *Gordon Paving Co. v. Blaine County Bd. of County Comm'rs.*, 98 Idaho 730, 572 P.2d 164 (1977).

[8] Upon a surface reading of *Memorial Gardens* and *Gordon Paving*, it might appear that no action by local land use authorities upon an application for a special or conditional use permit could affect a landowner's entitlement to continue his prior nonconforming use. Such a reading would suggest that the local authorities must disregard any prior nonconforming status in considering the application. However, we believe that *Memorial Gardens* and *Gordon Paving* should be read beyond the surface. In each of those cases, the actual predicate for discussion was that the activity specified in the application did in fact come within the scope of the original nonconforming use. That predicate does not exist in the present case. It appears without dispute that the Birds' application envisions, at least in part, activities which had not been commenced before the zoning ordinance was enacted. Thus, the uses said to be constitutionally protected here are not coextensive with the uses embraced by the conditional use application. The ap-

plication seeks substantially to expand the scope of activities conducted on the applicants' property. Nonconforming uses have no inherent right to be extended or enlarged. *Bastian v. City of Twin Falls, supra.*

■ In our view, if a landowner engaged in certain constitutionally protected activities seeks to add uses not so protected, there is nothing inappropriate about local authorities inquiring whether the landowner is willing—as a condition of granting the requested permit—to allow regulation of all his activities under the current zoning ordinance. In some circumstances, such an arrangement could benefit both sides. The governing board might be able to achieve comprehensive rather than piecemeal regulation of the land uses. The landowner might obtain a permit that otherwise legitimately could be denied or burdened with conditions which he finds unacceptable. Each side could avoid future disputes over which activities had been constitutionally protected and which of them were allowed only under the terms of the permit.

■ We see nothing in *Memorial Gardens* or *Gordon Paving* that would prevent this type of explicit agreement between a landowner and local authorities. Nonconforming use rights are substantive due process rights. As a general rule, constitutional rights—including the right to due process—may be waived. *E.g., Shepard v. Barron*, 194 U.S. 553, 24 S.Ct. 737, 48 L.Ed. 1115 (1904). However, the waiver of any fundamental constitutional right is never presumed. *E.g., Emspak v. United States*, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955). Rather, the waiver must be affirmatively demonstrated.

■ Accordingly, it cannot be presumed, from the mere fact that a landowner applies for a conditional use permit, that he intends to waive his constitutional protection for those activities which represent prior nonconforming uses. In such a case, the outcome of the application will not affect the scope of uses constitutionally protected. Therefore, the local authorities

need not undertake to identify the extent of constitutionally protected uses, except insofar as it may be helpful in determining the actual extent of additional activities contemplated by the application. In any event, such a unilateral determination by the local authorities is not binding upon the landowner. It does not represent an authoritative adjudication of the scope of nonconforming use rights. That, in the last analysis, is for the courts to decide. *See generally* 1 R. ANDERSON, AMERICAN LAW OF ZONING 2d § 6.08 (1976). However, if the landowner affirmatively agrees to waive his claim of constitutional protection with respect to some or all of the nonconforming uses on his property, then the land use authorities and the landowner together may make a record of the waiver and of the specific uses within the scope of waiver.

We conclude that the district court's observation that "grandfather rights" *should* be determined upon remand was overbroad. Unless the Birds affirmatively agree to waive their constitutional protection for any prior nonconforming uses, the scope of those uses need not be determined when reconsidering the conditional use application. The district court's memorandum decision is modified to direct that the Birds' "grandfather rights" *may* be determined upon remand, in accord with this opinion.

As so modified, the decision of the district court is affirmed. Because the issues presented to us have been ancillary to the decision reversing the Board's action, we deem it appropriate that each party bear its own costs on appeal. Because genuine legal questions have been raised, and the appeal was neither brought nor pursued frivolously, unreasonably or without foundation, we similarly decline to award attorney fees.

WALTERS, C.J., and SWANSTROM, J., concur.