776 P.2d 452

BEAR LAKE EDUCATION ASSOCIA-
TION, an unincorporated Association,
by and through Bruce BELNAP, Floyd
Bunderson, Joan Bunderson, Judy Bur-
dick, Polly Dahlke, Nancy Deutscher,
Leon Howell, Scott Kunz, Steve Kunz,
Down Lowe, Verlyn Parker, Marden
Phelps, Bernard Sparks, Linda Thom-
as, Cindy Wilcox, Dallas Arnell, Jean-
nie Brokens, Earl Burdick, Art Heinz-
man, Judy Hymas, Lorraine Kimball,
Gaylea Manning, Arlo Rasmussen, Sar-
ah Rigby, Mary Lour Talbot, Robert
Transtrum, Glenn Bee, Maxine Cand-
land, Bruce Christensen, Susan Dun-
ford, Lynn Etcheverry, Barbara Gran-
dy, Gloria Helm, Ruth Johnson, Sherry
Lyn Joy, Jo Ann Matthews, Janet Pe-
terson, Daleen Pugmire, Jaren Pug-
mire, Aralee Sparks, Jill Stach, Janice
Valentine, Victoria Weber, Jolyn John-
son, Ann Massey, Janelle Mattson, Cas-
sandra Parker, Celia Peterson, Kath-
leen Stucki, and Edyth Ward, Members
of Association, on behalf of themselves
and all other Members of Association,
Plaintiffs–Appellants,

v.

BOARD OF TRUSTEES OF BEAR
LAKE SCHOOL DISTRICT NO.
33, Defendant–Respondent.

No. 17532.

Supreme Court of Idaho.

June 27, 1989.

Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for plaintiffs-appellants. Neil D. McFeeley argued.

Green & Nyman, Ctd., Boise, for defendant-respondent. Kenneth D. Nyman argued.

HUNTLEY, Justice.

Bear Lake Education Association (Association) brought action in district court against the Board of Trustees of Bear Lake School District (District) to compel it to honor that portion of a "Master Agreement" regarding arbitration of a grievance. Both parties moved for summary judgment. The court entered summary judgment against the Association, holding that the provision in the agreement over which the grievance arose interfered with the District's discretion to hire, retain and discharge the professional employees of the school district, and as these duties were nondelegable, the provision in contention was not the proper subject of arbitration and, therefore, unenforceable. The Association's cross-motion for summary judgment was denied. The Association appeals. Today we vacate the order granting the District's motion for summary judgment and remand the case for further proceedings consistent with this opinion.

### Background of the Appeal

The Bear Lake Education Association is a local education organization which exclusively represented the teachers of Bear Lake School District No. 33 at all times relevant to this case. The Association represented the teachers in negotiations with the Board of Trustees of Bear Lake School District. These negotiations produced a "Master Agreement," which was ratified by the parties effective for a term from 29 August 1986 until 31 August 1987. Article XV of the Master Agreement provided that if a disagreement arose as to interpretation or application of the agreement, a grievance could be presented by the Association, and then established a four step procedure

for resolution of that grievance. If there was dissatisfaction with the disposition of the grievance in the first three steps, step four provided:

4. If the Association is not satisfied with the disposition of the grievance of step # 3 or the time limits expire without the issuance of the Board's written reply, **the Association may submit the grievance to final and binding arbitration** under the *Voluntary Labor Arbitration Rules* of the American Arbitration Association. If a demand for arbitration is not filed within thirty (30) days of the date for the step # 2 answer, then the grievance shall be deemed withdrawn. (Emphasis supplied.)

In May 1987, one of the teachers of Bear Lake School District was notified that his teaching contract would not be renewed as the District felt it was necessary to reduce the number of teachers employed within the district. In conformance with Article XV, the teacher involved filed a grievance, asserting that the District's action was in direct violation of Article XIX of the Master Agreement, the "reduction in work force provision," which provided:

A. **When a reduction in force becomes necessary, lay-offs will be made on a last hired first fired basis** within the certificated area where cuts are deemed necessary, except in situations where a wide disparity in competence is demonstrated and documented by the established evaluation procedures. In such situations lay-offs may be made in such a way as to retain the best qualified personnel available teaching in the district. (Emphasis supplied.)

Neither the teacher nor the members of the Association's Grievance Committee received satisfaction during the first levels of meetings with the District. Accordingly, the Association provided written notice of its intention to submit the grievance to arbitration as called for in Article XV. In September 1987 the District responded with written notice to the Association that it would not consent to the submission of

the grievance to arbitration, contending that the grievance alleged by the teacher and the Association was not a proper subject of arbitration. In January 1988 the Association brought an action in district court seeking to compel the District to comply with Article XV and submit the grievance to binding arbitration.

In Part I of this opinion we will discuss whether the District may be compelled to honor a provision of a Master Agreement, between itself and the Association, governing grievance resolution. In Part II we will address the District's contention that the Association did not have standing to sue in district court, and discuss whether the individual teacher involved is an indispensable party to this action.

## I.

The first issue is whether the Board of Trustees of Bear Lake School District may be legally compelled to honor that portion of a Master Agreement between the District and the Bear Lake Education Association which requires the submission of grievances pertaining to the application or interpretation of the agreement to binding arbitration.

The legislature has specifically empowered and statutorily required the board of trustees of each school district to enter into negotiation agreements with local education associations. *Gilbert v. Nampa School Dist. No. 131*, 104 Idaho 137, 147, 657 P.2d 1, 11 (1983) (articulating the procedures in the Professional Negotiations Act, I.C. § 33-1271 *et seq.*); *See also Buhl Ed. Ass'n v. Joint School Dist. No. 412*, 101 Idaho 16, 607 P.2d 1070 (1980); *School Dist. No. 351 Oneida County v. Oneida Ed. Ass'n*, 98 Idaho 486, 567 P.2d 830 (1977) (cases involving consideration and interpretation of I.C. § 33-1271 *et seq.*) The Bear Lake Education Association is a "local education association" within the meaning of the Professional Negotiations Act, which represents the teacher employees of School District No. 33. I.C. § 33-1272(2); *School Dist. No. 351 Oneida County v. Oneida Ed. Ass'n*, 98 Idaho 486, 488, 567 P.2d 830, 832 (1977). After exten-

sive negotiations, pursuant to the "negotiation agreement" the Board of Trustees of Bear Lake School District entered into a "Master Agreement" with the Bear Lake Education Association which remained in effect until 31 August 1987.

The District contends that although I.C. § 33-1271 requires each school district to enter into "negotiation agreements" and conduct negotiations with local education associations in accordance therewith, that duty is conditioned by the language of I.C. § 33-1276, which provides:

**33-1276. Intent of act.**—*Nothing contained herein is intended to or shall conflict with, or abrogate the powers or duties and responsibilities vested in the legislature, state board of education, and the board of trustees of school districts by the laws of the state of Idaho.* Each school district board of trustees is entitled, without negotiation or reference to any negotiated agreement, to take action that may be necessary to carry out its responsibility due to situations of emergency or acts of God. (Emphasis supplied.)

The District contends that Article XIX of the Master Agreement is in conflict with duties and responsibilities vested in them by the laws of the State of Idaho. In refusing to consent to submit the grievance concerning application of Article XIX to binding arbitration, the District argues that both statutory provision and public policy required that they breach the Master Agreement, as employment decisions are matters entrusted solely to the discretion of the school board and, therefore, could not be delegated.

To support its argument, the District refers specifically to I.C. § 33-513 through § 33-515 and contends that the legislature placed upon it the duty and responsibility of employing, retaining and discharging professional personnel pursuant to these statutes, and that being compelled to honor Article XIX of the Master Agreement would interfere with these responsibilities by delegating away those duties vested in the District to an arbitrator. The District contends that I.C. § 33-513(1) specifically charges it with the responsibility of employing professional personnel on written contract, and that this duty is augmented by I.C. § 33-514 which establishes the District's "discretionary authority" to employ those teachers which it determines will provide the best education for the children. The District further urges that once it has exercised its discretionary authority in employing a teacher, I.C. § 33-515 allows the District to again exercise that authority by determining whether a third-year teacher will be afforded a renewable contract for a fourth year, urging that the legislature has placed the discretionary authority to execute these responsibilities solely in the hands of the District. Thus, the argument goes that to enforce the Master Agreement, in effect, delegates board authority to the arbitrator. It asserts that, pursuant to I.C. § 33-1276, it was without authority to delegate these responsibilities when it executed the Master Agreement, and now asks to be excused from its obligation under the agreement.

We do not agree that I.C. § 33-1276 precludes the school board from entering into or honoring the Master Agreement, nor do we so interpret Article XIX of the agreement as conflicting with or abrogating any of the power or responsibilities vested in the District by Idaho law, specifically, I.C. § 33-513 through § 33-515. The District has retained its power under I.C. § 33-513 to suspend, grant leaves of absence, or place employees on probation for any violations of rules or regulations of either the school board or the State Board of Education. The District has also retained all of its rights under I.C. § 33-514 to not renew a teacher's contract on the basis of unsatisfactory performance. Nor do we find that the District has bargained away any of its authority to determine whether a third-year teacher should be given a contract for a fourth year and, thus, receive renewable contract status under I.C. § 33-515. Nowhere has the legislature expressly prohibited a school board from agreeing to arbitrate a contract dispute as to either interpretation or procedures of implementing the contract, nor for that matter, has it statutorily excluded negotiation of adminis-

tration of reduction-in-force provisions. Article XIX of the Master Agreement deals only with the order in which layoffs shall occur when a reduction in force becomes necessary and takes into account competence, unsatisfactory performance, and retention of the best qualified teachers, when it specifically states:

> ... [e]xcept in situations where a wide disparity in competence is demonstrated and documented by the established evaluation procedures. In such situations layoffs may be made in such a way as to retain the best qualified personnel available teaching in the district.

The Master Agreement places no restrictions on the District's responsibility to the public to assure teacher qualifications and make tenure decisions. Indeed, the District has not delegated any of its discretionary authority, as the question of whether a reduction in force provision was necessary was left entirely to the discretion of the District and it exercised it by agreeing in advance what to do under certain circumstances. Whereas the Board of Trustees of Bear Lake School District was statutorily required to enter into a negotiation agreement with the Bear Lake Education Association, nothing in the Professional Negotiations Act limited the scope of negotiability as to provisions such as Article XV or Article XIX.

If parties to a negotiation agreement agree to negotiate certain subjects or to follow certain procedures in negotiating, they are contractually bound to do so. *Gilbert v. Nampa School Dist. No. 131*, 104 Idaho 137, 657 P.2d 1 (1983), see also *Buhl Ed. Ass'n v. Joint School Dist. No. 412*, etc., 101 Idaho 16, 607 P.2d 1070 (1980) (which holding lays to rest arguments that negotiation agreements are not binding contracts). Nothing compelled the District to agree with the Association regarding specific provisions. However, the District and the Association nevertheless provided for both the method of force reduction and a particular procedure for resolving any

grievances over interpretation of the Master Agreement. The parties' mutual promises to negotiate according to the negotiation agreement constitutes consideration for the negotiation agreement. *Gilbert*, 104 Idaho at 147, 657 P.2d at 11. If the District is allowed to unilaterally terminate the Master Agreement, or any provision thereof, the Professional Negotiation's Act would have little effect. *Buhl Ed. Ass'n. v. Joint Sch. Dist. No. 412*, 101 Idaho 16, 607 P.2d 1070 (1980). The theory behind the Professional Negotiation's Act is that the free opportunity for negotiation between the school districts and accredited representatives of the teacher employees will likely promote agreements which are equitable to both parties. The Master Agreement is such an agreement and does not interfere with the normal exercise of the right of the District to select its employees or to discharge them. Therefore, as there are no statutory provisions which dictate what the District and the Association are to negotiate, and specifically no provisions which dictate how a reduction-in-force or grievance resolution is to be implemented, the Board of Trustees of Bear Lake School District must abide by the terms of the Master Agreement and submit the Association's grievance to binding arbitration under Article XV. By this ruling we make no determination as to whether or not the matters subject to arbitration are moot or whether the resolution of some elements of the original agreement might require the joinder and participation of Mr. Vest or Mr. Hakeri [1]—such would be matter for resolution by the arbitrator.

## II.

The District argues that the Association did not and does not have standing to invoke the jurisdiction of the court on behalf of the individual teacher.

"Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he wants adjudicated. And the crucial inquiry in its

---

1. Mr. Vest was the teacher terminated and Mr. Hakeri is the teacher junior in terms of tenure who assumed Mr. Vest's duties.

determination is 'whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of [the court's] jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Bentel v. County of Bannock*, 104 Idaho 130, 656 P.2d 1383 (1983) (citing *Life of the Land v. Land Use Commission of the State of Hawaii*, 63 Haw. 166, 623 P.2d 431, 438 (1981), quoting *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (emphasis in original).

The District asserts that the Association has no personal stake in the outcome of this controversy and questions whether there exists associational standing, as it avers that the only relief the Association is seeking is personal to the discharged teacher. It contends that the Association has no standing as the relief the Association seeks does not benefit all of the members of the Association. We do not agree.

In Idaho, the elements of associational standing are derived from the United States Supreme Court's analysis of this issue. *Glengary–Gamlin Protective Ass'n. v. Bird*, 106 Idaho 84, 675 P.2d 344 (Ct.App.1984). Although some elements of standing in the federal system are colored by the constitutional requirements of a "case" or "controversy," the Supreme Court's analyses of associational standing are instructive. *Id.* at 87, 675 P.2d at 347. The Supreme Court analyses referred to by the *Glengary* court are established in the landmark case of *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. Moreover, in attempting to secure relief from injury to itself the Association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties. E.g., *NAACP v. Alabama*, 357 U.S. 449 [78 S.Ct. 1163, 2 L.Ed.2d 1488] (1958).

. . . .

Even in the absence of injury to itself, an association may have standing solely as the representative of its members. *National Motor Freight Assn. v. United States*, 372 U.S. 246 [83 S.Ct. 688, 9 L.Ed.2d 709] (1963). . . . The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. *Sierra Club v. Morton*, 405 U.S. 727, 734–41 [92 S.Ct. 1361, 1366–69, 31 L.Ed.2d 636] (1972). So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the case, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Warth*, 422 U.S. at 511, 95 S.Ct. at 2211–12. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. *Motor Freight*, 372 U.S. at 247, 83 S.Ct. at 689.

The Bear Lake Education Association is the sole representative of the teacher employees of the District and is the medium through which individual teachers collectively seek to reach first a negotiation agreement and later a Master Agreement with the Board of Trustees of Bear Lake School District. Any injury to an individual teacher within the Association as a result of breaching the Master Agreement would in turn be injurious to the Association. Both the Association as a party to the agreement, and each individual teacher as a member of the Association, have an interest in having the agreement enforced and interpreted for this and future relations.

Further, as standing often turns on the nature and source of the claim asserted, the actual or threatened injury may exist

solely by virtue of "statutes creating legal rights." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). As earlier stated, the District is statutorily required to enter into negotiation agreements with local education associations pursuant to I.C. § 33–1271 and the Association is the proper representative of the teachers as a "local education association" within the meaning of I.C. § 33–1272 (Supp.1980). Article XV, paragraph D of the Master Agreement, which was executed pursuant to statutory mandate by both parties, specifically granted the Association the authority to file grievances on behalf of both itself and the individual teachers. By executing the agreement, the District, in essence, concurred that the Association should have standing in instances such as the one before us now.

Based on Article XV, paragraph D, the Association's complaint and the nature of relief sought, the Association has standing to bring this action. In bringing this suit, the relief requested by the Association is a declaration that the contract between the District and the Association be enforced according to its terms and that the Association's grievance go to binding arbitration as called for in the Master Agreement. Were the Association seeking damages, as opposed to declaratory or prospective relief, the injury would be held to be peculiar to the individual teacher and would require his joinder as an indispensable party to this action. Such is not the case before us now. The Association seeks a declaratory judgment as to enforcement of the Master Agreement and its interest in having the agreement enforced is germane to the Association's purpose and affects the associational ties of all the teachers. The possibility that the School Board would be allowed to unilaterally terminate a portion of the Master Agreement between the teachers and the School Board affects all of the members and, therefore, vests the Association with standing to sue on behalf of all the teachers. Further, since the relief sought is not unique to the individual teacher, he is not an indispensable party to this suit.

Reversed and remanded for further proceedings consistent with this opinion. Costs to appellants, no attorney fees awarded on appeal.

BAKES, C.J., BISTLINE, J., and McFADDEN, J. Pro Tem., concur.

SHEPARD, J. sat but did not participate due to his untimely death.