(February 21, 1894.)

## DUNN v. SHARP, State Wagon Road Commissioner.

[35 Pac. 842.]

Writ of Review—Person Beneficially Interested may Demand.— A citizen and taxpayer beneficially interested in the orders and proceedings of a board created by law, or in the doings of a public officer, has the right to bring a proper suit to determine whether such board or officer has performed his duties as the law requires.

State Wagon Road Commission—When Authorized to Let Contracts.—The state wagon road commission has no authority to let the contract for the construction of a section of said road until the survey of the same has been completed according to law.

Same—How Commission Gets Its Power.—The said board exists only by authority of the statute, and has no power or authority except that given it by the statute. In the performance of its duties it must be governed by the law prescribing and directing the method of its work.

(Syllabus by the court.)

An original proceeding by writ of review.

W. B. Heyburn, for Petitioner.

Where a statute directs certain things to be done preliminary to the expenditure of public money, such as the letting of contract for state road for which any person desiring to do so might be enabled to make an intelligent bid, and thus secure to the state the benefit of intelligent competition for the contract, a taxpayer may bring *certiorari* to prevent the illegal ex-

penditure of public money. (*State v. Jersey City,* 54 N. J. L. 437, 24 Atl. 571.) Courts now generally recognize the right of a taxpayer to maintain an action to prevent *ultra vires* acts of public board. (*Read v. Atlantic City,* 49 N. J. L. 558, 9 Atl. 759; *Handy v. City of New Orleans,* 39 La. Ann. 107, 1 South. 593; *Conery v. New Orleans W. W.,* 39 La. Ann. 770, 2 South. 555; *Crampton v. Zabriskie,* 101 U. S. 607; Beach on Public Corporations, secs. 625, 631; *Doan v. Board of Commrs.,* 3 Idaho, 38, 26 Pac. 167.) It is not necessary that the relator should have a special interest in the matter, or that he should be a public officer. (Moses on Mandamus, 197; *Hammilton v. State,* 3 Ind. 452; *People v. Collins,* 19 Wend. 56; *Commissioners of Pike Co. v. State,* 11 Ill. 202.) The proceedings under a statute to create a highway should be so definite and certain that a competent surveyor could with the record before him point out its location. (*Warren v. Brown,* 31 Neb. 8, 47 N. W. 633.) Strict compliance with the statute is a jurisdictional necessity in laying out a road under a statute. (*Ruhland v. Hazel Green,* 55 Wis. 664, 13 N. W. 877; *Williams v. Holmes,* 2 Wis. 129; *Austin v. Allen,* 6 Wis. 134; *Bobb v. Carver,* 7 Wis. 124; *Roerborn v. Schmidt,* 16 Wis. *519; *Isham v. Smith,* 21 Wis. 32; *State v. Langer,* 29 Wis. 68; *Damp v. Town of Done,* 29 Wis. 419; *State v. Castle,* 44 Wis. 670.) All contracts made by a municipal corporation (or board of commissioners) must conform to the mode prescribed in the charter for making such contract. (Beach on Public Corporations, sec. 542; *Zottman v. San Francisco,* 20 Cal. 98, 81 Am. Dec. 96, and note.) Statutes authorizing special acts and conferring special powers must be strictly followed. (*Starford v. Worn,* 27 Cal. 172; *Atkins v. Kinnan,* 20 Wend. 241, 32 Am. Dec. 534; *Sharp v. Johnson,* 4 Hill, 92, 40 Am. Dec. 259.) The acts of the state wagon road commission in letting Payne contract were void and beyond the jurisdiction of the board and *certiorari* lies. (*Burnett v. Drain Commrs.,* 56 Mich. 374, 23 N. W. 50; *Bixby v. Goss,* 54 Mich. 551, 20 N. W. 581; *Null v. Zierle,* 52 Mich. 540, 18 N. W. 348.)

George M. Parsons, Attorney General, and James H. Hawley, for State Wagon Road Commissioners.

No brief filed.

Plaintiff is an owner of real estate, both improved and unimproved, in the town of Wallace, state of Idaho, and resides in said town; is a taxpayer upon said property. He is also one of the owners of a certain mining property and a quartz-mill near Pierce City, in Shoshone county, Idaho. He has been operating the same for the last year, and expects to operate them in the future. Defendants are the state wagon road commissioners, appointed and organized under and by virtue of the act of the legislature of the state of Idaho, approved February 16, 1893. (2d Sess. Laws, p. 23.) After the organization of the said board, one George R. Trask, a competent engineer, was employed to make survey of a section of said state wagon road, running from the town of Wallace, in Shoshone county, to the mouth of the St. Mary's river, on the St. Joseph's river. The said engineer proceeded to survey said road. Commencing at the town of Wallace, he surveyed and staked the line of the said road from the said town of Wallace to a point on the St. Joseph river, twenty to twenty-five miles above the mouth of the St. Mary's river. So much of the survey was completed on or before the July, 1893, meeting of the state board of commissioners. At this meeting said Trask made report to the said board of his said survey. No plot of the road so surveyed was ever made out or placed on file with the board of commissioners, and no specifications or profile of the amount so surveyed was ever made. Differences having arisen between the said engineer, Trask, and the commissioners, the engineer handed in his resignation. The survey not having been finished, no profile of the portion so surveyed was ever placed on file. The board of state road commissioners then employed one White to make survey from said town of Wallace to the mouth of the St. Mary's river. The latter, commencing at a point on the St. Joseph river opposite the mouth of the St. Mary's river, surveyed the line of said road along the north

bank of the St. Joseph river a distance of about eleven miles, leaving, of said White survey, twenty or twenty-five miles yet to be made, to connect the same with the town of Wallace, and of the Trask survey about twenty-five miles unsurveyed, to connect the same with the mouth of the St. Mary's river. At this juncture the said board of commissioners advertised for proposals for the construction of the different sections of said road throughout the state. In reply to this advertisement one William H. Payne filed proposal to construct the said state road from a point on the Mullen road in Shoshone county to the mouth of the St. Mary's river for the sum of $16,850, which said bid was accepted by the said board of state road commissioners, and a contract entered into by and between the said William H. Payne of the first part, and the state wagon road commissioners, party of the second part, for the construction of a portion of said road described as follows: "The point of beginning being at a point on the county road known as the 'Mullen Road,' between the east and west forks of Pine creek, in Kingston precinct, Shoshone county, Idaho; thence up and along the main branch of Pine creek to the divide between the head waters of Pine creek and Falls creek; thence over said divide to the northwest of headwaters of said Falls creek to the divide of Montan Doon creek; thence down and along said creek to the southeast corner of Montan Doon ranch, on the north side of the St. Joseph river, at the mouth of the St. Mary's river. The said Payne further agreeing to perform and complete said work on or before the twentieth day of September, 1894. . . . . The said party of the first part further covenants and agrees to and with the said party of the second part that he will begin, carry on, and prosecute the said work to completion in all its several branches within five months from the date of this agreement." The contract was executed by N. J. Sharp, president of the state wagon road commission of Idaho, and John Hunter, secretary on the part of the state, and by William H. Payne on his own part. Acknowledged before George H. Stewart, notary public. This contract contained various other provisions, not necessary here to mention.

MORGAN, J. (After Stating the Facts.)—It will be noticed that the foregoing contract was executed and entered into without any survey of said road having been made or completed between the town of Wallace and the mouth of the St. Mary's river; that no profile or any specifications of said survey or any survey between the above-described points was ever placed on file in the office of the state wagon road commission. The statute authorizing the construction of a system of state wagon roads in this state in part is as follows: "Sec. 2. There shall be constructed as a portion of said system of roads, a road beginning at the head of the falls of the Little Salmon river, . . . . and extending thence north through Nez Perces and Latah counties, by the way of the mouth of the St. Mary's river to Wallace in Shoshone county, . . . . together with such bridges over the streams crossed by all of said roads as may be necessary for safe and convenient travel thereon." After providing in the five succeeding sections for the organization of the state wagon road commission, section 8 provides as follows: "Sec. 8. Said commission or a majority of the members thereof, shall at their first meeting, or as soon as practicable, appoint one or more persons to survey and definitely locate the roads to be constructed under this act, between such places and along such general routes as the commissioners may order, subject to the provisions of the act," etc. The section then proceeds to prescribe the qualifications of such engineers and their compensation, and proceeds: "All work done by said engineers shall be accurately performed and clearly marked out in the field, provided that no grade on said road shall exceed ten per cent. Sec. 9. As soon as practicable after the lines of said roads have been determined the commission shall meet at such place as may be determined upon and shall proceed to divide the lines of said proposed roads into sections, naming as the beginning and end of each section well known and easily determined points; and shall determine and settle upon the width of proposed grades, the points on said roads where culverts, corduroys, drains, and turnouts shall be necessary, the distance upon each side of the roads that trees shall be cut down, the bridges that

shall be built and their dimensions, method of construction and material out of which they shall be built, and all other requirements that may be proper and necessary. Sec. 10. That upon dividing said roads into sections, as provided for in section 9, the said commission shall let as soon as practicable in the year 1893, to the lowest responsible bidder or bidders, . . . . contracts for such of the several and different sections of said road as the commission may decide upon letting for said year." Section 10 further provides that one of said sections shall commence "at Wallace in Shoshone county, and extending toward the mouth of the St. Mary's river in Kootenai county, and on the right of the road, and commencing at the mouth of the St. Mary's river in Kootenai county and extending toward Mt. Idaho."

The first question to be considered by the court is the authority of the plaintiff in this cause to bring this action. A very similar condition of things existed in the case of *Orr v. Board,* reported in 3 Idaho, 190, 28 Pac. 416. It is not necessary here to repeat the opinion in that case, but it is sufficient to say that on the authority of that case and on the case of *Maxwell v. Supervisors,* 53 Cal. 391, we hold that the plaintiff, being a citizen and a taxpayer in Shoshone county, and the value of his property being affected by the location and building of this road, he has the right to bring suit to determine whether the commissioners have exceeded the authority given them by the law in the letting of this contract, and this latter question is the principal one to be determined by this court. It will be seen from the provisions of the law as above quoted that, prior to letting any contract, an engineer shall be appointed, and surveys made, and the road accurately marked out on the ground over which it passes; that the commission shall determine and settle upon the width of proposed grades, the points on such roads where culverts, corduroys, drains, and turnouts shall be necessary, the distance on each side of the roads that trees shall be cut down, the bridges that shall be built, and their dimensions, etc. The board of state wagon road commissioners exists only by authority of the statute

quoted above; it has no power or authority except that given it in this statute. In the performance of its work it must be governed by the law prescribing its duties and directing the method of its work. It will be seen by the above statement of facts that the commission has proceeded to let this contract to the said Payne without having first made any survey, plot, or profile of the road to be so constructed. This is in direct violation of the statute. The reasons for the provisions are apparent, as no person desiring to build this portion of the road, without the same is surveyed, staked upon the ground, maps and profiles thereof made, the bridges to be built and positions and dimensions thereof designated, can form any correct estimate of the amount of money required to build the same, and therefore can make no proposal from which he himself or the commissioners can form any judgment as to whether the sum proposed for construction is too great or too small. As no complete survey has been made of this section, neither the commissioners nor the contractor can know whether the road can be built for the sum named, or whether it can be built for one-half the sum. The board not having followed the provisions of the law above set forth, the court must hold that the said contract so entered into between the state wagon road commission and the said Payne is illegal and void. Costs awarded to petitioner.

Huston, C. J., and Sullivan, J., concur.