## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46193

MIKE ZEYEN, individually, and as a patron of Pocatello/Chubbuck School District #25 and, on behalf of and as Guardian Ad Litem of his minor children, Olivia Zeyen, Noah Zeyen and Ann Zeyen; RACHAEL BOOTH, individually, and as patron of Pocatello/Chubbuck School District #25 and, on behalf of and as Guardian Ad Litem of her minor children, Madison Booth and Braydon Booth,

    Plaintiffs-Appellants,

v.

POCATELLO/CHUBBUCK SCHOOL DISTRICT NO. 25, a municipal corporation of the State of Idaho,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2019 Term

Opinion Filed: October 23, 2019

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Robert C. Naftz, District Judge.

District court decision on motion to certify and leave to amend, <u>affirmed.</u>

Huntley Law Firm, PLLC, Boise and Wood Law Group, PC, Idaho Falls, for appellants. Theodore J. Wood argued.

Anderson, Julian & Hull, LLP, Boise, for respondent. Brian K. Julian argued.

---

BURDICK, Chief Justice.

This appeal arises from the Bannock County district court's order denying a motion for class certification and a motion for leave to amend the complaint. The named plaintiff ("Zeyen") seeks declaratory relief and recovery of damages from Pocatello/Chubbuck School District No. 25 on behalf of all students currently enrolled in the district and their guardians. Zeyen alleges that School District 25's practice of charging fees violates Article IX, section 1, of the Idaho

1

Constitution (the "Education Article"). Zeyen first sought to certify the class to include all students within School District 25. Zeyen's later motion to amend sought to add a takings claim under both the Idaho and U.S. Constitutions. The district court denied Zeyen's motion for class certification based on lack of standing and denied his motion to amend both as untimely and prejudicial to School District 25. Zeyen timely appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In July 2016, Zeyen filed his original complaint on behalf of all K–12 school children in School District 25. Zeyen sought declaratory judgment that the fees imposed by School District 25 were "illegal and unconstitutional." Zeyen also requested the "reimbursement" or "refund" of the fees paid for the 2014–15 school year as well as the following years. Jurisdiction was proper, Zeyen contended, under the Education Article. Answering, School District 25 argued that jurisdiction should be under Idaho's Constitutionally Based Educational Claims Act ("Educational Claims Act" or "the Act") because the Education Article does not provide a private cause of action for damages. School District 25 also argued that Zeyen did not have standing and was not entitled to class certification. In November 2016, the court calendared the case for trial to take place in fall 2017 with motions to amend pleadings due on January 3, 2017.

In October 2016, Zeyen moved for class certification. A decision on that motion was delayed after a few events altered the course of proceedings. First, School District 25 claimed it stopped charging fees that were associated with academic credit beginning with the 2016–17 school year. Second, *Joki v. State* was on appeal to this Court. 162 Idaho 5, 394 P.3d 48, 6 (2017). This Court heard oral argument in the *Joki* case in January 2017 and took the case under advisement. A short time after, Zeyen moved to suspend proceedings until this Court issued a decision in *Joki*. The district court granted Zeyen's motion and vacated the trial dates.

This Court issued the *Joki* opinion in April 2017. *Id*. In August 2017, the district court held a status conference. Shortly thereafter, Zeyen filed, and the district court granted, a motion for leave to amend his complaint. The first amended complaint differed from the original complaint by asserting that Zeyen and the proposed class "have a right and standing to sue both as a constitutional claim under [the Education Article], and also, concurrently, as a claim under the Constitutionally Based Education Claims Act" based on this Court's decision in *Joki.*

A few months later, in October 2017, Zeyen moved for leave to amend his complaint a second time to plead a violation of the takings clause. The proposed complaint contained

2

additional references to the takings clause in the Idaho and U.S. Constitutions as well as 42 U.S.C. § 1983. In support of his motion, Zeyen argued that he had a viable claim for an unlawful taking under this Court's recent decision in *Hill-Vu Mobile Home Park v. City of Pocatello*, 162 Idaho 588, 591, 402 P.3d 1041, 1044 (2017). He also asserted that the Educational Claims Act could not limit his Constitutional claims.

In January 2018, the district court heard argument on Zeyen's motion for leave to amend the First Amended Complaint and his motion to certify the class. The court orally denied the motion to amend the First Amended Complaint and took the class-certification issue under advisement. The court later issued an order denying the motion for class certification. In the accompanying memorandum decision, the court recited its reasoning for denying Zeyen's motion to amend the Amended Complaint, explaining that Zeyen's "undue delay" in asserting the takings claim would be "especially prejudicial" given "that discovery was concluded in accordance with the accelerated timeline" he had requested. As to class certification, the court ruled that Zeyen lacked standing to pursue the class action. The court determined that the Educational Claims Act provides the sole mechanism for Zeyen to acquire standing under the Education Article. Because the Educational Claims Act does not address past wrongs or individual damages, the court ruled that Zeyen failed the typicality requirement for class-action standing because he lacked a redressable injury required for individual standing.

At Zeyen's request, the court certified the memorandum decision as a final appealable judgment under Rule 54(b) of the Idaho Rules of Civil Procedure, and Zeyen appealed. After his appeal was conditionally dismissed for lack of a partial judgment, the court entered a partial judgment denying the motion for class certification. This Court elected to treat the final partial judgment as a motion for permissive appeal and granted the motion.

## II.     ISSUES ON APPEAL

1. Did the district court abuse its discretion when it denied Zeyen's motion for leave to amend the first amended complaint?

2. Did the district court abuse its discretion when it denied Zeyen's motion for class certification for lack of standing?

3. Is Zeyen entitled to attorney's fees on appeal?

## III.     STANDARD OF REVIEW

This Court reviews a trial court's decision to grant or deny a motion for class certification for an abuse of discretion. *BHA Investments, Inc. v. City of Boise*, 141 Idaho 168, 171, 108 P.3d

315, 318 (2004) (citing *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 (1982)). Likewise, this Court reviews a trial court's decision to grant or deny a motion to amend the pleadings for an abuse of discretion. *PHH Mortg. v. Nickerson*, 160 Idaho 388, 396, 374 P.3d 551, 559 (2016) (citing *Clark v. Olsen*, 110 Idaho 323, 326, 715 P.2d 993, 996 (1986)).

To determine whether a lower court has abused its discretion, this Court asks whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citing *Hull v. Giesler*, 163 Idaho 247, 250, 409 P.3d 827, 830 (2018)).

For questions of law, this Court applies a de novo standard of review. Questions of jurisdiction, statutory interpretation, and the interpretation and application of procedural rules are questions of law. *See Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017) ("Jurisdictional issues, like standing, are questions of law, over which this Court exercises free review.") (quoting *Christian v. Mason*, 148 Idaho 149, 151, 219 P.3d 473, 475 (2009)); *Hayes v. City of Plummer*, 159 Idaho 168, 170, 357 P.3d 1276, 1278 (2015) ("The interpretation of a statute is a question of law that the Supreme Court reviews de novo."); *Smith v. Treasure Valley Seed Co.*, 161 Idaho 107, 109, 383 P.3d 1277, 1279 (2016) ("[T]he application of a procedural rule is a question of law on which we exercise free review.") (quoting *Zenner v. Holcomb*, 147 Idaho 444, 450, 210 P.3d 552, 558 (2009)).

For constitutional challenges, "every presumption is in favor of the constitutionality of the statute, and the burden of establishing the unconstitutionality of a statutory provision rests upon the challenger." *Osmunson v. State*, 135 Idaho 292, 294, 17 P.3d 236, 238 (2000) (citing *State v. Nelson*, 119 Idaho 444, 447, 807 P.2d 1282, 1285 (Ct. App. 1991)).

## IV.    ANALYSIS

Although reasonable minds may differ on issues of school funding, this appeal presents two narrow, discrete procedural issues: (A) whether the district court erred in denying Zeyen's motion to amend the first amended complaint; and (B) whether the district court erred in denying Zeyen's motion to certify the class. For the reasons expressed below, we determine that the district court did not err in denying either motion.

4

**A. The district court did not abuse its discretion when it denied Zeyen's motion to amend the complaint.**

Zeyen contends that the district court abused its discretion when it denied his motion to amend his complaint to specifically identify the takings and due-process clauses of the Idaho and U.S. Constitution. The district court denied his motion on grounds of undue delay and prejudice to School District 25. To challenge undue delay, Zeyen argues that there was no scheduling order at the time, no court-imposed deadlines had passed, and no work had been completed on the merits. As for prejudice, Zeyen contends that the court would not have to reopen discovery because discovery on the merits was still ongoing. In view of the record, we determine that Zeyen has failed to show that the district court abused its discretion in denying his motion for leave to amend the first amended complaint.

A motion for leave to amend the pleadings is governed by Rule 15(a) of the Idaho Rules of Civil Procedure. Rule 15(a) allows parties to amend the pleadings in three circumstances: (1) as a matter of right under certain circumstances; (2) with the opposing party's written consent; and (3) with leave of court. The purpose of Rule 15 is "to allow the best chance for each claim to be determined on its merits rather than on some procedural technicality" and "to relegate pleadings to the limited role of providing parties with notice of the nature of the pleader's claim and the facts that have been called into question." *Clark v. Olsen*, 110 Idaho 323, 326, 715 P.2d 993, 996 (1986). "In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, 'be freely given'" because an "outright refusal to grant the leave without any justifying reason appearing for the denial . . . is merely [an] abuse of [] discretion and inconsistent with the spirit" of the Rules of Civil Procedure. *Id.* at 326, 715 P.2d at 996.

In *Clark v. Olsen*, this Court recognized some of the possible reasons that would justify denying a motion to amend the pleading. *Id.* at 326, 715 P.2d at 996. Originally set out in *Foman v. Davis* by the U.S. Supreme Court, those reasons are:

- Undue delay;
- Bad faith and dilatory motive on the part of the movant;
- Repeated failure to cure deficiencies by amendments previously allowed;
- Undue prejudice to the opposing party; and
- Futility.

*Id.* (citing 371 U.S. 178, 182 (1962)). This Court has expanded on the *Foman* factors to note that "[t]imeliness alone is not a sufficient reason to deny a motion to amend." *DAFCO LLC v.*

5

*Stewart Title Guar. Co.*, 156 Idaho 749, 756, 331 P.3d 491, 498 (2014). Rather, "[t]imeliness is important in view of the *Foman* factors . . . ." *PHH Mortg. v. Nickerson*, 160 Idaho 388, 396, 374 P.3d 551, 559 (2016) (quoting *Carl H. Christensen Family Tr. v. Christensen,* 133 Idaho 866, 871, 993 P.2d 1197, 1202 (1999)).

Here, the district court first denied the motion to amend from the bench at the hearing:

> This motion for leave to file a Second Amended Complaint is interesting, and I recognize this is purely discretion on my part, and I have to look at that in that way, and I know, also, that I have to consider allowing amendments to be given freely and liberally—liberal grant to allow amendments to take place in Complaints, but it is subject to exceptions, undue delay, bad faith, repeated failure to cure deficiencies by the amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendments, and so I've been looking over my notes here with regard to that, and looking at the fact that I do have discretion with regard to this amendment, and looking at both arguments here, and the taking is a new cause of action . . .
>
> The defendants have also argued that to allow the amendment by the plaintiffs the second time around would prejudice the defendant, because this could have been asserted, and this is one of the areas that I am concerned about, this could have been asserted at the time of the filing of the Complaint, and, now, there is going to be undue delay. Discovery has ended. There would be a requirement to have to reopen discovery to allow this to occur.
>
> I'm very hesitant to allow the amendment at this point in time . . . . I think based on my discretion and reviewing the briefing and argument here today, I'm going to deny the motion to amend for the second amendment in this Complaint, and take the rest of it under advisement.

The court also recited its reasoning for denying Zeyen's motion to amend in the memorandum decision:

> Among other concerns discussed at the hearing, this Court specifically observed that allowing [Zeyen] to amend [his complaint] a second time would unjustifiably prejudice [School District 25]. [Zeyen] could have asserted a takings cause of action at the commencement of their litigation over two years ago. The undue delay in asserting such a claim at this late stage in the proceedings is especially prejudicial in light of the fact that discovery was concluded in accordance with the accelerated timeline requested by [Zeyen]. To allow [Zeyen] to amend their Complaint again would necessitate reopening discovery. Therefore, [Zeyen's] request to add a claim to this action would "complicate and delay the principal action and impose an unwarranted hardship" and undue prejudice on [School District 25].

Beginning with the first factor in the four-part *Lunneborg* standard, the district court expressly recognized that the decision to grant leave to amend was within its discretion. For the

6

second factor, the court acted within the outer bounds of its discretion by acknowledging the liberal standard contained in I.R.C.P. 15 for granting leave, as well as the *Foman* factors that weigh against granting leave. Lastly, as will be detailed below, the district court "acted consistently with the legal standards applicable to the specific choices available to it" and "reached its decision by the exercise of reason" by adequately evaluating Zeyen's request in light of the *Foman* factors. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

The district court cited two justifying reasons for denying Zeyen's motion: undue delay and prejudice. Both reasons are supported by the record. First, Zeyen's delay was undue. Zeyen is correct to point out that the motion to amend was "timely" in the sense that the motion did not violate any court-imposed deadlines or affect a trial date because the court suspended all proceedings and vacated the 2017 trial dates to await this Court's decision in *Joki*. However, Zeyen conflates "timeliness" and "undue delay." These are separate concepts. *See Carl H. Christensen Family Tr.*, 133 Idaho at 871, 993 P.2d at 1202 ("The time between filing the original complaint and the amended complaint is not decisive . . . Rather, timeliness is important in view of the *Foman* factors such as undue delay, bad faith, and prejudice to the opponent.").

The district court rested its decision on the "undue" nature of the delay, not timeliness. Zeyen's counsel conceded at the motion hearing that the failure to include the takings claim in the original complaint was due to lack of awareness:

> THE COURT: Mr. Huntley, one question with regard to your motion to amend. The argument has been put forth by the defendants here is that you could have brought this claim of action and this cause of action at the beginning of your lawsuit, and you didn't. Why not?
>
> MR. HUNTLEY: Very frankly, I didn't know about—that would be a taking, and I only became familiar with it when this *Pocatello Hill*[-*Vu*] case came up.

Yet, the *Hill-Vu Mobile Home Park v. City of Pocatello* decision did not establish new law. 162 Idaho 588, 402 P.3d 1041 (2017). Rather, when the *Hill-Vu* court determined that the City of Pocatello's charges to consumers constituted a taking without just compensation, the Court relied on prior cases to support the takings analysis. *Id.* at 593–94, 402 P.3d at 1046–47. Namely, the *Hill-Vu* court cited to *BHA Investments, Inc. v. City of Boise. Id.* (citing 141 Idaho 168, 108 P.3d 315 (2004)). There, this Court held that because Boise had no authority to charge a fee, its exaction of the fee constituted a taking of property under the United States and Idaho Constitutions. *BHA Investments*, 141 Idaho 168, 172, 108 P.3d 315, 319 (2004). So the basic

7

premise of Zeyen's takings argument—that School District 25 was exacting fees without authority because the Idaho Constitution requires the education to be free—had a legal foundation before this Court issued *Hill-Vu*. As a result, the district court's undue-delay analysis is grounded in solid reasoning and meets the fourth prong of the *Lunneborg* standard.

The district court rested its second justification—prejudice to School District 25—on the fact that discovery would need to be reopened and that Zeyen had requested expedited discovery. On appeal, Zeyen contends that discovery on the merits was still ongoing, and that the parties agreed the expedited discovery "was limited to issues pertaining to class certification." School District 25 maintains that that discovery was not intended to be bifurcated and would need to be reopened if the motion was granted. The record offers little to help our analysis. When the case resumed after *Joki* was issued, Zeyen filed a case management plan with the Court. That plan was not included in the record. The court's discovery order and memorandum decision offer some clues as to its contents. The court's order states that depositions should be completed by the end of September 2017 and that Zeyen's renewed motion for class certification would be filed in November 2017. According to the memorandum decision, the plan withdrew Zeyen's petition to expand the class action beyond School District 25 and "requested an expedited discovery schedule, proposing that all discovery, including 'discovery depositions', be completed by the end of September 2017."

Zeyen points to his counsel's statement at the motion hearing that "neither one of us needs any more discovery. . . ." However, later in the same hearing, the district court expressed its understanding that discovery had ended and would need to be reopened if the complaint was amended. School District 25 affirmed this understanding when asked by the court. Without more in the record to contradict the district court's understanding that granting leave would prejudice School District 25 based on Zeyen's request to expedite discovery, the justification stands. *See Hansen v. White*, 163 Idaho 851, 853, 420 P.3d 996, 998 (2018) ("When a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the district court.") (quoting *Gibson v. Ada Cnty.*, 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2003)). If discovery was bifurcated, Zeyen bears the responsibility to prove as much on appeal. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("This Court will not search the record on appeal for error.") (citing *Suits v. Idaho Bd. of Prof'l Discipline*, 138 Idaho 397, 400, 64 P.3d 323, 326 (2003)).

On balance, the district court acknowledged and applied the appropriate *Foman* factors in deciding whether to grant Zeyen's motion for leave to amend the complaint. Zeyen has failed to show that the district court abused its discretion by denying his second motion for leave to amend the complaint.

**B. The district court did not abuse its discretion by denying Zeyen's motion for class certification for lack of standing.**

Zeyen appeals from the denial of a motion for class certification. However, the dispute at issue is whether Zeyen had standing to bring his claim under the Educational Claims Act. In denying Zeyen's motion, the district court ruled that Zeyen failed to meet the redressability prong of the standing analysis. In the district court's view, Zeyen could only bring his claim under the Educational Claims Act, and because the Act did not provide for retrospective relief, Zeyen failed to demonstrate that he had standing to bring the claim on behalf of the proposed class. Zeyen argues that the Educational Claims Act allows for retrospective relief, and, if the Act doesn't allow for retrospective relief, then it unconstitutionally infringes on his right to be free from an unlawful taking. We find no error in the district court's interpretation of the Educational Claims Act. We also decline to entertain Zeyen's constitutional argument because it was not considered by the district court and therefore, there is no adverse ruling to appeal.

1. The Educational Claims Act does not provide relief for past conduct.

Zeyen's claim arises from the Legislature's alleged failure to carry out its duty under the Education Article. As will be shown, this means that Zeyen's claim must be brought under the Educational Claims Act. Because the Act does not provide the relief sought by Zeyen, the district court did not err in determining that he lacked standing to bring his claim on behalf of the class.

Certification of a class action is governed by Rule 77 of the Idaho Rules of Civil Procedure. *Bettwieser v. New York Irrigation Dist.*, 154 Idaho 317, 324, 297 P.3d 1134, 1141 (2013). Those seeking to certify a class must first show that they have standing. *See Tucker v. State*, 162 Idaho 11, 19, 394 P.3d 54, 62 (2017). Idaho has adopted the constitutionally based federal justiciability standard. *ABC Agra, LLC v. Critical Access Grp., Inc.*, 156 Idaho 781, 783, 331 P.3d 523, 525 (2014) (citing *Davidson v. Wright*, 143 Idaho 616, 620, 151 P.3d 812, 816 (2006)). As a sub-category of justiciability, standing is a threshold determination that must be addressed before reaching the merits. *Martin v. Camas Cty. ex rel. Bd. Comm'rs*, 150 Idaho 508, 513, 248 P.3d 1243, 1248 (2011). That Idaho courts have the power to issue declaratory judgments does not alter the standing requirement. *ABC Agra, LLC.*, 156 Idaho at 783, 331 P.3d

9

at 525 ("[A]n actual or justiciable controversy is still a prerequisite to a declaratory judgment action; thus, courts are precluded from deciding cases which are purely hypothetical or advisory.'") (quoting *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 326, 297 P.3d 1134, 1143 (2013).

For class actions, standing is met "if at least one named plaintiff satisfies the requirements of standing against every named defendant." *Tucker*, 162 Idaho at 19, 394 P.3d at 62. Under the traditional standing analysis, "the plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* (internal quotations omitted). This appeal focuses on redressability. An injury can be redressed if the court can grant the relief sought by the plaintiff:

> Standing's redressability element ensures that a court has the ability to order the relief sought, which must create a substantial likelihood of remedying the harms alleged. Redressability requires a showing that "a favorable decision is likely to redress [the] injury, not that a favorable decision will inevitably redress [the] injury." However, it cannot be only speculative that a favorable decision will redress the injury.

*Id.* at 24, 394 P.3d at 67.

The Education Article sets out the Legislature's constitutional obligation to establish a system of public education:

> The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature of Idaho, to establish and maintain a general, uniform and thorough system of public, free common schools.

Idaho Const. art. IX, § 1. "The legislature has chosen to fulfill its constitutional obligation by the establishment of local school districts to provide educational services and by granting the school districts the authority to raise and spend money for that purpose." *Osmunson v. State*, 135 Idaho 292, 296, 17 P.3d 236, 240 (2000); *see also* I.C. § 6-2203. While "the ultimate responsibility for fulfilling the legislature's constitutional duty cannot be delegated," it is "not unreasonable for the legislature to . . . declare that allegations that the required educational services are not being furnished should first be addressed to the local school districts which have been given the responsibility and authority to provide those services." *Osmunson*, 135 Idaho at 296, 17 P.3d at 240. Under the Act, the "ultimate remedy to which the plaintiffs are entitled under the Education Article is the provision of constitutionally required educational services." *Id.* at 295, 17 P.3d at

10

239 (citing *Idaho Sch. for Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 850 P.2d 724 (1993)).

The Educational Claims Act outlines the exclusive procedures by which a citizen may challenge the Legislature's compliance with its Constitutional obligation. I.C. §§ 6-2202; 6-2205. The Act specifically limits standing: "Only patrons of the school district and the state, as parens patriae, have standing to bring an action to furnish constitutionally required education services." *Osmunson*, 135 Idaho at 294, 17 P.3d at 238. Reflecting the Legislature's delegation of its responsibility to the school districts, the Act requires the plaintiff to sue local school districts before allowing joinder of the Legislature or State. I.C. § 6-2205

In the initial proceeding, the district court sits as the finder of fact. I.C. § 6-2207. If the district court finds that the school district is providing all the constitutionally required services, then it "shall issue a declaratory judgment to that effect." I.C. § 6-2208. If the district court finds that the school district is not providing constitutionally required educational services, the court must determine whether the school district is providing services that are not constitutionally required or is providing constitutionally required services inefficiently. I.C. § 6-2208(1). Then, if the court finds that the school district is not efficiently using its resources to furnish required services and those services could be provided with available resources if the school district were more efficient, the Act authorizes several alternative remedies—injunctive relief among them. I.C. §§ 6-2208(2)–2209.

For example, if the court determines that the available resources are insufficient to provide constitutionally required services, the court must also determine whether the school district is properly using its taxing authority. I.C. § 6-2208(3). If the district court finds that the school district is directing resources to areas which are not required under federal law or the Idaho Constitution, or if the school district is inefficiently managing its resources, the district court must give the plaintiff and the school district up to 35 days to negotiate a consent agreement. I.C. §6-2209(2). If an agreement is reached, the court has the authority to accept, modify, or reject the consent agreement. *Id.* If a consent agreement is not reached or if the court rejects the consent agreement, then the court must give the school district up to 35 days to submit a plan for meeting the constitutional duty. I.C. §6-2209(3). The court may accept, modify, or reject the proposed plan. *Id.*

The enforcement of these plans relies on the district court's power to issue orders. The Act provides the power in four separate subsections. First, the court "may enjoin the local school district from offering some or all of those services not federally mandated and not constitutionally required." I.C. §6-2209(4)(a). Second, the court "may enjoin the local school district from offering some or all of the constitutionally required services in a manner that consumes more of the local district's resources than necessary." I.C. § 6-2209(4)(b). Third, if the school district has failed to impose levies to the full extent authorized by law, the court "may order the local school district to impose [the levies] in the maximum amount allowed by law without an election and to impose an educational necessity levy as authorized by this chapter." I.C. § 6-2209(4)(c). Lastly, the Act provides a catch-all power to the district court:

> If the district court finds that any other order or mandate would assist the local school district in providing constitutionally required educational services, the district court may issue any order that it determines would assist the local school district in providing constitutionally required educational services.

I.C. § 6-2209(4)(d). If the district court concludes that the school district could not offer all the federally and constitutionally required services—despite using funds efficiently and using its taxing authority to the maximum extent—only then may the district court add the State or the Legislature to the suit. I.C. § 6-2210(2).

Returning to the case at hand, the Act's procedural framework supports the district court's finding that the Act provides for only present and prospective relief. The Act provides standing only to the guardians of current and future students. The Act directs the court to inquire into the school district's current system of allocating funds. The Act's remedies are aimed at curing current funding deficiencies. Here, no order by the district court could remedy any current violations because School District 25 voluntarily ceased assessing the fees that Zeyen attacks.

Zeyen urges this Court to find that a district court has authority to order the reimbursement of past damages under the catch-all provision's power to impose "any order". I.C. § 6-2209(4)(d). Zeyen's proposed interpretation would be an upside-down reading of the power granted under the Act. The district court has the power to impose "any order *that it determines would assist the local school district in providing constitutionally required educational services.*" I.C. § 6-2209(4)(d) (emphasis added). Practically speaking, ordering the school district to pay monetary restitution is a backwards way of accomplishing the statutory goal where the action must determine whether the school district has adequate resources, or is

12

properly allocating its resources. A necessary precursor to the "any order" power is a finding that the school district is providing non-essential services or is providing services inefficiently. I.C. § 6-2209(1). Since School District 25 no longer charges the fees, an inquiry to the past practices is prohibited. Under the statutory scheme, if the district court finds that the school district is currently providing all the constitutionally required services, it must issue a declaratory judgment to that effect and, presumably, conclude the proceedings. I.C. § 6-2208.

Contrary to Zeyen's assertion, the power to award past damages under the Educational Claims Act was not implicitly sanctioned by this Court in *Joki*, 162 Idaho at 10, 394 P.3d at 53. There, the two issues on appeal were whether the Act unconstitutionally altered Rule 77 of the Idaho Rules of Civil Procedure and whether the plaintiff needed to comply with the Act's requirement that he first sue the school district before seeking reimbursement against the State for allegedly unconstitutional fees. *Id.* This Court merely noted that the plaintiff's claim for reimbursement of funds fell under the Act because the claim depended on the assumption that the fees violated the Education Article. *Id.* Similarly misplaced is Zeyen's reliance on *Osmunson v. State*, where this Court pointed out that the Educational Claims Act expands judicial power by providing remedies not known at common law. 135 Idaho at 298, 17P.3d at 242. These statements were in response to the district court's finding that the Educational Claims Act's remedies violated the separation-of-powers provision of the Idaho Constitution. *Id.* This Court used section 6-2209(4)(d) as an example to show that a district court's powers were broadened in some respects, rather than limited. *Id.* These comments have no bearing on whether the Act allows a district court to award damages for past violations of the Education Article.

Lastly, Zeyen also claims that he has standing to pursue declaratory relief. The Act provides that the district court must issue declaratory relief only in the event the school is providing all the required services. Zeyen pursues a judgment declaring that School District 25's past practices were in violation of the Education Article. Again, Zeyen's sought-after relief is not provided by the plain terms of the Act.

In sum, the district court did not err in concluding that the Educational Claims Act does not provide relief for past violations of the Education Article.

2. <u>Zeyen's constitutional argument is not properly presented on appeal because there is no adverse ruling by the district court.</u>

Zeyen contends that if the Act cannot be construed to allow for retrospective relief, it must be struck down as unconstitutional for impermissibly limiting his ability to pursue a takings

13

claim under the Idaho and U.S. Constitutions. The district court never addressed whether the Educational Claims Act impermissibly forecloses a takings action because Zeyen's motion for leave to amend the first amended complaint was denied. In both the original complaint and the first amended complaint, Zeyen exclusively sought relief under the Education Article and the Educational Claims Act. Even though Zeyen pleaded facts that could fit a takings claim, Zeyen failed to plead a short and plain statement of a takings cause of action thereby giving School District 25 notice that such a claim would be brought. As a byproduct of Zeyen's failure to adequately present the takings claim, he has failed to secure an adverse ruling. Without an adverse ruling, we will not review Zeyen's argument on appeal. *See Johnson v. Crossett*, 163 Idaho 200, 207, 408 P.3d 1272, 1279 (2018) ("This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error.") (citing *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 491, 224 P.3d 1068, 1080 (2009)).

### C. Zeyen is not entitled to attorney's fees on appeal.

Zeyen argues in his appellant's brief that he is entitled to attorney's fees on appeal under the private-attorney-general doctrine, under the common-fund doctrine, under 42 U.S.C. § 1988, or "under such other measure as the Court may deem appropriate." However, Zeyen retracts his request for attorney's fees in his reply brief: "Appellants suggest the issue of an award of attorney's fees on appeal is premature at this time, and the issue should first be determined by the trial court at an appropriate stage of the proceedings." We accept this rescission and decline to award attorney's fees on appeal.

Even if Zeyen's request for attorney's fees has legal or factual foundation, Zeyen is correct that an attorney's fee award would be premature at this time because attorney's fees cannot be awarded before a final decision on the merits of the case. *See, e.g.*, *Idaho Sch. for Equal Educ. Opportunity v. Idaho State Bd. of Educ.*, 128 Idaho 276, 285, 912 P.2d 644, 653 (1996) (stating that the factors used to determine whether the award attorney's fees under the private attorney general doctrine "indicate that there must be some resolution of the substantive issues before a decision on attorney fees can be reached."); *Wensman v. Farmers Ins. Co. of Idaho*, 134 Idaho 148, 151–52, 997 P.2d 609, 612–13 (2000) (stating that the "general rule" for the common fund doctrine is that the insured may retain costs and expenses "out of the fund recovered from the wrongdoer, after the payment of the policy . . . ."); 42 U.S.C. § 1988(b) ("In

14

any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."). This is a permissive appeal from an interlocutory order. No decision on the merits has been reached.

## V.    CONCLUSION

For the reasons stated above, we affirm the district court's denial of Zeyen's motion to certify the class and his motion for leave to amend the first amended complaint.

Justices BRODY, BEVAN, and MOELLER **CONCUR**.

STEGNER, J., dissenting.

I respectfully dissent from the majority's opinion because I believe the district court and this Court have erred in several significant ways. Accordingly, I would vacate and remand to the district court. There are three reasons to take this path. First, the district court abused its discretion in denying Zeyen's motion to amend his complaint by failing to weigh the relative hardships to the respective parties, which is the test to be applied. Second, the district court erred in concluding Zeyen lacked standing under the traditional federal standing doctrine. Third, the district court and the majority opinion rely on federal standing doctrine, which Idaho courts are not bound by and should not employ to analyze Zeyen's standing to assert his claims. While our prior decisions may support such an analysis, I believe Idaho has incorrectly adopted federal standing requirements, which are contrary to Idaho's Constitution.

**A.  The district court abused its discretion in not allowing Zeyen to amend his pleading.**

The majority opinion concludes that the district court did not abuse its discretion in denying Zeyen's motion to amend his complaint. The district court denied Zeyen's motion because it concluded that allowing the complaint to be amended would cause undue delay and thereby prejudice the District. However, I believe the district court failed to apply the appropriate test. Consequently, I would hold that the district court abused its discretion.

When reviewing a trial court's decision for abuse of discretion, this Court considers whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted). A

15

district court fails to recognize the outer bounds of its discretion if it fails to state or apply the correct legal standard. *See Crowley v. Critchfield*, 145 Idaho 509, 513, 181 P.3d 435, 439 (2007).

A motion for leave to amend the pleadings is governed by I.R.C.P. 15(a). Rule 15(a) provides that a "court should *freely* give leave [to amend a pleading] when *justice so requires*." I.R.C.P. 15(a) (italics added). Here, justice so requires because the school district's proffered reasons for opposing Zeyen's motion to amend his complaint are insignificant when compared to the foreclosure of Zeyen's potentially meritorious constitutional claim.

The purposes of Rule 15(a) demonstrate that the district court abused its discretion by not allowing Zeyen to amend his complaint. In discussing Federal Rules of Civil Procedure 15—an identical counterpart to Idaho's Rule 15[1]—Professors Wright and Miller state that Rule 15 "reflects two of the most important policies of the federal rules." 6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civ. § 1471 (3d ed. 2019). First, "the rule's purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities[,]" as demonstrated by the permissive approach that judges are instructed to employ. *Id.* Second, the Rule establishes that pleadings have "the limited role of providing the parties with notice of the nature of the pleader's claim or defense and the [facts that have] been called into question; they no longer carry the burden of fact revelation and issue formulation, which now is discharged by the discovery process." *Id.*

While I recognize that not all motions to amend pleadings should be granted (especially if an amendment would be futile), the district court failed to appropriately assess important considerations regarding Zeyen's motion to amend. When determining whether *either* party would suffer any prejudice from the amendment, the district court should have considered the hardships that would be suffered by *both* parties. *Id.* at § 1487. The hardship suffered by Zeyen includes being prevented from pursuing a cognizable constitutional claim. On the opposite side of the scale, the hardships suffered by the District include the possibility of both discovery being reopened and a delay of trial. Once the relative hardships are identified and considered, the district court must weigh those hardships to determine whether to grant or deny the motion to amend the pleading. *Id.* There is nothing in the district court's analysis to suggest this weighing

---

[1] "When a federal rule is identical in material respects to an Idaho rule, this Court may consider decisions of the federal courts interpreting the federal rule when interpreting the Idaho rule." *Hoffer v. Shappard*, 160 Idaho 868, 874, 380 P.3d 681, 687 (2016) (citations omitted).

of relative hardships ever occurred. Moreover, had it occurred, the policy favoring amendment should have been followed.

The major concern I have with the district court's denial of Zeyen's motion to amend is that this denial will now permanently preclude Zeyen's claim of an unconstitutional taking. When comparing the relative hardships for the District (more discovery and possibly a delay in trial) with the hardships to Zeyen (losing a constitutional remedy and having the claim permanently dismissed), it is clear that the balance of hardships tips decidedly in favor of allowing Zeyen to amend his complaint. The decision of the district court runs directly counter to the purposes of the rule; it most assuredly does not "provide maximum opportunity for each claim to be decided on its merits[.]" *See* Wright & Miller, *supra* at § 1471. We should not countenance the dismissal of a potentially meritorious claim for technical reasons, which is precisely what occurred here. Accordingly, I conclude the district court abused its discretion when it failed to consider and then weigh the relative hardships to the parties. At a minimum, the case should be remanded to require such a balancing.

## B. CBECA cannot constitutionally limit the applicability of the Takings Clause.

The majority opinion avoids the issue of whether CBECA is an unconstitutional limitation of the Takings Clause of the Fifth Amendment of the United States Constitution, as incorporated to the States under the Fourteenth Amendment. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citation omitted). Zeyen alleges in his second amended complaint that the District's levying of school fees was unauthorized and in violation of Article IX, Section 1 of the Idaho Constitution, and therefore is an unconstitutional "taking." The majority has declined to address this issue by holding that Zeyen's constitutional argument has not been properly preserved on appeal because there has been no adverse ruling on the issue. To the contrary, the fact that the district judge rejected Zeyen's motion to amend the First Amended Complaint precludes Zeyen from even pursuing this constitutional remedy. Further, the district court states that CBECA is the exclusive means by which a plaintiff may challenge the Legislature's compliance with the Idaho Constitution. This is necessarily an adverse decision regarding the availability of a Takings Clause claim and the constitutionality of CBECA. To say the issue has not been preserved flies in the face of reality. Therefore, I believe we not only can but should address this issue.

17

It would be a clear constitutional error for any court to construe CBECA as foreclosing any potential recovery under the Takings Clause. Such a construction would allow the legislature to amend the United States Constitution with a simple piece of legislation. The exclusive means by which the United States Constitution may be amended is contained in Article V of the United States Constitution. U.S. Const. Art. V; *see also Young v. Wall,* 359 F. Supp. 2d 84, 89 (D.R.I. 2005) (explaining that a state law may not define property interests in such a way as to sidestep the application of the Takings Clause). If CBECA were somehow interpreted to limit the applicability of the Takings Clause, CBECA would clearly be unconstitutional.[2]

## C. The district court abused its discretion by denying Zeyen's motion for class certification for lack of standing.

The majority opinion concludes that the district court did not err in determining that Zeyen failed to demonstrate that he had standing in order to certify the class. The district court focused on whether Zeyen had standing to bring a claim under CBECA. I disagree with the majority because I believe that the district court abused its discretion in two ways: First, the district court made an erroneous factual finding regarding whether a potential remedy existed. Second, the district court inappropriately relied on federal standing doctrine. I believe the reliance on federal standing doctrine by the district court and this Court is misguided and that Zeyen has standing to bring a constitutional claim under CBECA. Therefore, Zeyen has the standing necessary to be an appropriate representative of the class. I would vacate the district court's determination that Zeyen lacks standing, and would remand for a determination regarding whether class certification should be granted.

1.    Zeyen has standing to assert his claim under CBECA in order to serve as the class representative.

Both the majority and the district court concluded Zeyen did not have standing under his CBECA claim based on one fact: the District purportedly stopped charging the unconstitutional fees at issue. The legal basis for this outcome is the majority's determination that CBECA only allows claims for *prospective* damages; therefore, because the school district had stopped charging the fees, the district court would have nothing to prevent in the future. However, this finding of fact is clearly erroneous due to the evidence the court had before it when it issued its

---

[2] The majority has *sub silentio* attempted to allow CBECA to amend the U.S. Constitution. It has done so by concluding that CBECA is the exclusive remedy for challenging the actions of a school board and by interpreting CBECA to afford only *prospective* relief. If CBECA is the exclusive remedy and retrospective relief is proscribed, the effect is a legislative limitation of a constitutional remedy.

decision. This Court is not required to defer to the factual findings of a district court if the findings were clearly erroneous. I.R.C.P. 52(a)(7).

For class actions, "standing is met if at least one named plaintiff satisfies the requirements of standing against every named defendant." *Tucker v. State*, 162 Idaho 11, 19, 394 P.3d 54, 62 (2017) (citation omitted). Under the traditional federal standing analysis, "the plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Id.* (internal quotations and alteration omitted).

The focus of both the majority and the district court is whether Zeyen has presented sufficient facts to demonstrate that there is a likelihood that his alleged injury could be redressed. The majority opinion and the district court concluded that the District had stopped charging all unconstitutional fees. Therefore, Zeyen was not entitled to any further remedy, even assuming the district court found in his favor. However, I believe this analysis to be in error and directly contrary to the evidence in the record.

Under Zeyen's CBECA claim, there were allegations that prospective (as opposed to retrospective) damages existed. Zeyen submitted the expert report of Dr. Russell Joki, which analyzed the purported unconstitutional fees both retrospectively and *prospectively*. As the case was filed the summer of 2016, any fees imposed after that date would have been considered prospective. The Joki report, filed in October of 2017, reads: "In tentative summary, subject to refinement after further analysis and discovery, I estimate the Pocatello/Chubbuck School District assessed unconstitutional fees as:

| | |
|---|---|
| 2014 – 2015 | $ 352,525 |
| 2015 – 2016 | $ 358,474 |
| 2016 – 2017 | $ 338,773 |
| 2017 – 2018 | $ 350,000 (estimated) |
| GRAND TOTAL | $ 1,399,792[.]" |

There was therefore evidence of the District imposing the challenged fees, which post-dated the filing of the complaint. In other words, there is a genuine issue of material fact as to whether the District engaged in allegedly prohibited behavior after the complaint was filed. Consequently, Zeyen has produced evidence of a CBECA claim because he has produced evidence of prospective damages.

In contrast, the District's attorney made a comment during the January 2, 2018, hearing that indicated that the school district had stopped charging the fees in the fall of 2016. While Zeyen's counsel conceded that the District had stopped charging some of the fees, he argued that the District was still charging certain fees that were detailed in Joki's report. This is evidenced by the inclusion of purportedly unconstitutional fees for the 2016-2017 school year. Instead of conducting an evidentiary hearing, the district court determined that the school district had stopped charging *all* unconstitutional fees and therefore no remedy existed for Zeyen's CBECA claims.[3]

Factual determinations at the early stages of the proceedings regarding whether a remedy exists create several problems. For example, "there is a risk that standing will be denied because hasty remedial determinations made at a preliminary stage do not reflect the full inventiveness that could be exhibited after trial." 13A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Juris. § 3531.6 (3d ed. 2019). Another risk of factual determinations is that standing may be denied at the outset of litigation as a matter of an imperfect remedial prediction made without the benefit of a full record. *Id.* For these reasons, district courts should be wary of prematurely concluding at an early stage that a plaintiff lacks standing because of the issue of redressability, particularly when there is a factual dispute.

That is precisely what happened here. The district court made a factual determination at an early stage of the proceedings and relied on a representation made by the District's attorney that the District had stopped charging allegedly unconstitutional fees. This is particularly disconcerting in this case because there was an expert report and statements from Zeyen's counsel which specifically contradicted the comments of the District's attorney that the school district was no longer charging certain fees. Accordingly, I believe that Zeyen made a sufficient showing that a remedy would be available to him if a decision were made in his favor.

Further, assuming that Zeyen can prove his Takings Clause claim, he would be entitled to compensation for the money wrongfully collected by the school district. (These would be accurately characterized as retrospective damages.) If the Court were to rule in his favor, a remedy would be available.

---

[3] Some United States circuit courts have held that a federal district court is required to hold an evidentiary hearing if there are any disputed facts regarding standing. *See, e.g.*, *Bischoff v. Osceola Cty.*, 222 F.3d 874, 879–80 (11th Cir. 2000); *Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214 (5th Cir. 1989); *Munoz–Mendoza v. Pierce*, 711 F.2d 421 (1st Cir. 1983).

Additionally, Zeyen has sufficiently demonstrated that the first and second requirements of standing would be satisfied as well. First, Zeyen suffered an injury in fact. As noted, CBECA provides a mechanism to bring a claimed injury relating to the provision of free educational services required by the Idaho Constitution. The imposition of allegedly unconstitutional fees would be a sufficient injury to satisfy this element. *See Joki v. State*, 162 Idaho 5, 10–11, 394 P.3d 48, 53–54 (2017).

Second, there is a sufficient causal connection between the injury and the complained of conduct. Here, the injury complained of is that Zeyen's school age children are not receiving a free public education as required by the Idaho Constitution. The conduct complained of is that the District charged unconstitutional fees in contravention of Idaho's constitutional requirement of free public schools. The conduct complained of is the cause of the alleged injury suffered. Therefore, the second element is satisfied.

Accordingly, all three requirements of federal standing would be satisfied. Consequently, I would vacate the district court's denial of Zeyen's motion to certify the class because Zeyen lacked standing, and remand for further proceedings to determine whether class certification should be granted

2. <u>The district court and majority opinion erred by applying the federal standing framework.</u>

Although I believe that Zeyen sufficiently demonstrated that he has standing under the traditional federal standing doctrine, I have additional concerns with this Court's utilization of federal standing doctrine. I believe that the adoption of the federal standing doctrine is in contravention of Idaho's Constitution.

*a. Idaho's erroneous adoption of federal standing framework.*

Idaho has a complicated history regarding its interpretation of standing. At the time that Idaho adopted its constitution and during the period of early statehood, citizens and taxpayers had "standing" to bring lawsuits against state officers. *See, e.g.*, *Orr v. State Bd. of Equalization*, 2 Idaho 923, 28 P. 416 (1891); *Dunn v. Sharp*, 4 Idaho 98, 35 P. 842 (1894); *Nuckols v. Lyle*, 8 Idaho 589, 70 P. 401 (1902); *McConnell v. State Bd. of Equalization*, 11 Idaho 652, 83 P. 494 (1905); *Indep. Sch. Dist. No. 5 ex rel Moore & Richcreek v. Collins*, 15 Idaho 535, 98 P. 857 (1908); *Sanborn v. Pentlan*, 35 Idaho 639, 208 P. 401 (1922). During Idaho's early existence, the common law allowed citizens to enforce tax laws and to prohibit illegal expenditures of public

21

monies. *See* Michael S. Gilmore, *Standing Law in Idaho: A Constitutional Wrong Turn*, 31 IDAHO L. REV. 509, 538 (1995).

However, Idaho's standing law has changed significantly since the 1920s. Between 1930 and 1980, this Court slowly chipped away at a citizen's ability to bring a suit against the government for allegedly improper actions. *Id.* at 552–558. Not until the 1980s did Idaho's appellate courts first introduce and embrace the federal standing principles. *Id.*; *see also Glengary-Gamlin Protective Ass'n, Inc. v. Bird*, 106 Idaho 84, 87, 675 P.2d 344, 347 (Ct. App. 1983). The Court of Appeals in *Glengary-Gamlin* observed that the "case or controversy" requirements were rooted in the federal constitution, describing them as "peculiar" even though the court ultimately adopted federal standing principles. *Glengary-Gamlin Protective Ass'n, Inc.*, 106 Idaho at 87, 675 P.2d at 347. This Court then cited *Glengary-Gamlin* favorably in *Bear Lake Education Association v. Board of Trustees of Bear Lake School District No. 33*, 116 Idaho 443, 448, 776 P.2d 452, 457 (1989), recognizing the peculiar nature of the "case or controversy" requirements.

"However, when [this Court] again addressed standing later . . . in *Miles v. Idaho Power Co.*, it embraced federal standing principles without *Glengary-Gamlin*'s and *Bear Lake*'s qualifications that federal standing law is colored by the federal constitution's 'case or controversy' requirement." *Gilmore*, *supra* at 564 (citing *Miles v. Idaho Power Co.*, 116 Idaho 635, 778 P.2d 757 (1989)). Instead, *Miles* held that in order "to satisfy the case or controversy requirement of standing, litigants generally must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Miles*, 116 Idaho at 641, 778 P.2d at 763. Since then, this Court has continued to recognize "the case and controversy requirement" as if it were somehow a provision contained in Idaho's Constitution. *See, e.g.*, *Boundary Backpackers v. Boundary Cty.*, 128 Idaho 371, 375, 913 P.2d 1141, 1145 (1996); *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002); *Thomson v. City of Lewiston*, 137 Idaho 473, 477, 50 P.3d 488, 492 (2002).

This line of cases, taken at face value, fails to acknowledge that this Court is not bound by the case or controversy language contained in the United States Constitution. Idaho's Constitution has no comparable language to this effect. Further, none of the cases cited above have ever tried to reconcile or explain the "case or controversy" requirement in the federal constitution to any provision in the Idaho Constitution, Idaho statute, or Idaho common law. In

fact, the United States Supreme Court specifically addressed and rejected this interpretation, albeit in a plurality opinion. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989). In *ASARCO Inc.*, the U.S. Supreme Court considered a case which arose in Arizona state court and would have been dismissed in federal court for lack of standing. *Id.* The Court stated,

> But the state judiciary here chose a different path, *as was their right*, and took no account of federal standing rules in letting the case go to final judgment in the Arizona courts. That result properly follows from the allocation of authority in the federal system. We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute.

*Id.* (italics added) (citations omitted). Therefore, it is clear from *ASARCO Inc.* that the "case or controversy" language contained in the United States Constitution has no applicability on the states, even when the state is interpreting a federal statute. *See id.*

### b. This Court has relaxed standing requirements in the past.

As noted, Idaho's Constitution does not have an explicit "standing" provision similar to the U.S. Constitution's. In addition, it appears that Idaho's Constitution was intended to be broader than the United States Constitution in this regard. Article I, Section 18 of the Idaho Constitution states, "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice." Idaho Const. art. I, § 18. One logical interpretation of this provision is that Idaho's Constitution was meant to be more protective of an individual citizen's right to bring suit to redress government action. *See Gilmore*, *supra* at 583.

Under the recognition that this Court is not bound by the federal doctrine and that our Constitution grants greater protection, this Court has used alternative tests to the federal standing requirements. For example, this Court's recent decision in *Regan v. Denney*, 165 Idaho 15, 21, 437 P.3d 15, 21 (2019) reaffirmed this Court's willingness and ability to embark on a different path from the federal standing requirements in particular cases. Under the relaxed standing doctrine, this Court will allow a claim to proceed where: "(1) the matter concerns a significant and distinct constitutional violation, and (2) no party could otherwise have standing to bring a claim." *Id.* (citing *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 514, 387 P.3d 761, 767 (2015)). This Court adopted such a framework because it recognized that to hold otherwise

23

would essentially delete provisions from the Constitution because they would otherwise be unenforceable. *Coeur d'Alene Tribe*, 161 Idaho at 514, 387 P.3d at 767 (citation omitted). The claims brought by Zeyen are precisely those we found appropriate to resolve in *Regan*. Those claims involve a matter concerning a significant and distinct constitutional violation that no party would otherwise have standing to challenge if the traditional standing doctrine were applicable. It is difficult to understand how the majority concludes Zeyen lacks standing given our recent case law is this realm.

Accordingly, this Court is not limited by the federal standing requirements, and it has previously recognized as much. I think it is an error of constitutional proportions to interpret Idaho's Constitution as employing a standing requirement similar to the U.S. Constitution's.

*c. Standing based on the Idaho Constitution and Idaho statutes.*

Idaho has a specific statute which deals with standing in a claim under CBECA. The purpose of CBECA is to provide a "mechanism for adjudicating the performance of [the legislature's obligation to maintain a system of public, free schools] when there are allegations that public schools do not provide educational services that they are required to provide as part of a general, uniform and thorough system of public, free common schools." I.C. § 6-2202. Idaho Code section 6-2205 states, in relevant part,

> [a]ny person who is a schoolchild, the parent or guardian of a schoolchild, or the parent or guardian of a child who will enter public school in the next two (2) years *has standing to sue and may bring suit against* the local school district in which the schoolchild or potential schoolchild resides on the ground that the local school district is not providing constitutionally required educational services.

I.C. § 6-2205(1) (italics added). The plain language of the statute demonstrates that anyone who is a schoolchild or the parent or guardian of a current schoolchild has standing to bring a claim against the school district. As CBECA is the main mechanism in bringing this type of constitutional claim, I believe that this Court should recognize that Zeyen has standing to sue, notwithstanding the federal standing framework.

Here, Zeyen is a parent of three minor children. At the time Zeyen filed his complaint, all three children were attending public schools and subject to the fees Zeyen contends are unconstitutional. Accordingly, Zeyen has standing under the plain language of the statute. As a result, I believe the district court erred and abused its discretion in denying Zeyen's motion for class certification for the purported reason that Zeyen lacked standing.

24

For the reasons noted above, I believe that Idaho courts have misapplied federal standing doctrine in contravention of Idaho's Constitution. I would hold that Zeyen has standing under CBECA and under the Idaho Constitution.

In sum, I believe the district court and this Court have erred in significant ways. First, the district court abused its discretion in denying Zeyen's motion to amend his complaint because the district court never undertook a weighing of the hardships that is at the heart of a motion to amend. I would therefore vacate the district court's denial of Zeyen's motion to amend and remand. Second, the district court made an erroneous factual finding regarding whether Zeyen would have a remedy under CBECA. Evidence was presented by Zeyen to establish damages were prospective and therefore redressable under CBECA. Third, the district court and the majority inappropriately rely on federal standing doctrine in contravention of Idaho's Constitution. I would vacate the district court's denial of the motion to certify the class and remand to the district court for a determination of whether class certification should be granted given that Zeyen arguably has standing and redressable damages sufficient to bring the claim. Accordingly, I respectfully dissent.